HERMAN SCHUBACH v. McDONALD, Judge, and CHICAGO & ALTON RAILWAY COMPANY; HIRT v. KINEALY, Judge, and ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY; LEONARD v. FISHER, Judge, and CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY; MAX SCHUBACH v. HOUGH, Judge, and MISSOURI PACIFIC RAILWAY COMPANY; STEINER v. WOOD, Judge, and ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY; WESSERMAN & COMPANY et al. v. HOUGH, Judge, and MISSOURI, KANSAS & TEXAS RAILWAY COMPANY.

In Banc, December 23, 1903.

1. **Prohibition:** JURISDICTION OF TRIAL COURT: ERROR IN PLEADING. However defective an application for an injunction presented to the trial court may be, if it was a matter over which the court had jurisdiction, that is, power to deal with, the Supreme Court will not prohibit the court from proceeding further in the matter. If it has jurisdiction over the subject-matter, it has power to decide whether the pleadings are or are not properly drawn, and to decide whether or not the plaintiff is entitled to the relief sought.

*Held,* by VALLIANT, J., that where the trial court erroneously holds that it has jurisdiction of the subject-matter, and renders an interlocutory decree of such effect that it is destructive of defendant's rights beyond redress by appeal, the writ of prohibition ought to go; and such is the effect of a temporary decree in injunction where the cause could not reach the appellate court in time for a reversal of the final decree to be of any value to the defendant.

2. ———: INJUNCTION. The legal principles governing the right to a writ of prohibition are the same whether the action in which the writ is sought, is an injunction suit, or an action at law.

3. **Non-Transferable Railroad Ticket**: OCCASION. A railroad has a right to issue non-transferable excursion or commutation tickets based upon a consideration of a reduced rate. And this right is not limited to special occasions, but is applicable to general occasions as well, and is unlimited as to time.

4. ———: ———: FREEDOM OF CONTRACT. No one has the right to purchase a special ticket at a reduced price, which on its face recites that it is not transferable and that it is supported by the consideration of a reduced rate, and by accepting it at such reduced rate agree to its terms, and thereafter violate his agreement by transferring it to another. Nor can the assignee of such a ticket acquire any right thereunder or thereto, for the original purchaser can convey none.

5. ———: PROHIBITION: INJUNCTION. If any person buys any such ticket and sells it to a ticket broker, to be used by him or another, the railroad can invoke the powers of a court of equity to cancel the contract, because of the fraud thus perpetrated.

6. ———: ———: ———: AGAINST TICKET BROKER. The circuit court has jurisdiction, in a concrete case, to issue an injunction to restrain ticket brokers from buying and selling the return part of a non-transferable railroad ticket originally sold at a reduced rate.

7. ———: ———: ———: CONCRETE CASE: PETITION AIDED BY ANSWER. The petition for an injunction alleged that certain non-transferable excursion and commutation railroad tickets have been and would be issued by the plaintiff railroad during the subsequent holding of the World's Fair, based upon a consideration of reduced rates, and that it will be impossible, or at least unbearably inconvenient, for the original purchaser to be identified at the station whence the original purchaser wishes to return, or for the train conductor to determine whether the person attempting to ride on such ticket is the original purchaser; that it would be a fraud on the company for the original purchaser to sell any such ticket to any one, or for any one else to ride on such ticket, and a fraud on it for ticket brokers to buy such ticket and sell it to any person; that in the nature of things it would be impossible for the company to ascertain that such frauds were about to be committed until after the holder of the ticket had boarded the return train, and then it would be too late to ask for or obtain injunctive relief; that the ticket brokers are insolvent; and that even if such frauds could be discovered in time to ask for specific relief in each case, it would involve the prosecution of a multiplicity of suits to meet the exigencies; and prayed for an injunction restraining the ticket brokers

from buying, selling or dealing in such non-transferable tickets. To this petition the return denied the power of the court to issue an injunction, on the ground that no concrete case was presented by the petition, but went further and set up as a defense that it had been the common practice of the plaintiff to issue such non-transferable tickets and to receive them as good for a return ride by whomsoever presented, and that the ticket brokers had a number of such tickets on hand, and that the injunction would render such tickets valueless and destroy their business, and asserted their right to deal in such tickets in the future. *Held*, first, that the office of a writ of injunction being to prevent a wrong, the petition states a concrete case in equity, which the circuit court has power to deal with; second, even if the petition were insufficient in not stating a concrete case, the return helped out the insufficiency, and made a concrete case as to the tickets now held, and gave the court jurisdiction over a live subject-matter. In either case, therefore, a prohibition would not lie.

*Held*, by VALLIANT, J., dissenting, that the court had no jurisdiction to enjoin the ticket brokers from buying and selling such tickets to be hereafter issued by the railroads; that the trial court, when the case comes on for final hearing, can not hear evidence to prove that at the time of the filing of the suits the railroads intended to issue such non-transferable commutation tickets and had cause to apprehend that if they did issue them the ticket brokers would buy and sell them, for such evidence proves no issue of fact; that there being no ticket issued by the railroads or purchased by the ticket brokers, there is no concrete fact upon which to base a judgment; and since the suits are aimed chiefly at tickets hereafter to be issued, to determine in advance that the buying and selling of such tickets would be illegal and 'in contempt of court, is to establish a rule of conduct not yet arisen, the effect of which is to destroy the business of the ticket broker, and to declare, as to him, any recital printed on the tickets to be *res adjudicata*.

8. ――――: ――――: CONCRETE CASE GENERALLY. A concrete case for an injunction is presented wherever the right of the plaintiff is threatened by the defendant, and the damage would be irreparable, and where protection of that right belongs to the class of cases that are cognizable in equity.

9. ――――: ――――: ――――: INFRINGEMENT UPON LEGISLATIVE POWER. Where ticket brokers in their return to an injunction writ to restrain them from buying, selling and dealing in non-transferable excursion or commutation railroad tickets, which the railroad proposed to issue, and stamp non-transferable, because based on a reduced price, assert their intention to invade the right of the railroad to issue such tickets, and to buy and sell such tickets, the court by enjoining that threatened injury does not infringe upon the powers of the legisla-

tive branch of the government, for it creates no new right in any one, or any rule of civil conduct, but simply protects the railroad in a right it already has, namely, to sell such tickets at a reduced rate, and make them non-transferable.

*Held*, by VALLIANT, J., dissenting, that as the Legislature has not declared the business of ticket brokers to be unlawful, the courts have no right, by an injunction which is destructive of their business, to in effect do so. And to declare that the buying and selling of non-transferable commutation tickets is unlawful, is an act legislative in its character.

## Prohibition.

PRELIMINARY RULE DISCHARGED.

*Judson & Green* and *Henry W. Bond* for petitioners.

(1) There is no primary equity in the petition for injunction, and no existing controversy as to present existing property rights. State ex rel. v. Ross, 122 Mo. 457; State ex rel. v. Moore, 155 Mo. 445. (2) The writ of prohibition in Missouri is one of common-law and statutory right, and lies to restrain an inferior court from unauthorized acts, in cases of which such court has jurisdiction, as well as in those of which it has none. It lies in cases of excess of jurisdiction as well as want of jurisdiction. Railroad v. Ware, 135 Mo. 230; Spelling on Ex. Remedies, sec. 1726; R. S. 1899, secs. 4448 et seq.; State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Oliver, 163 Mo. 696; State ex rel. v. Hirzel, 137 Mo. 447; State ex rel. v. Elkin, 130 Mo. 105; State ex rel. v. Wood, 155 Mo. 445; State ex rel. v. Eby, 170 Mo. 497; School District v. Burris, 84 Mo. App. 663. (3) It is immaterial that the petitions for injunction may have been demurrable as failing to state a cause of action. The prohibition will lie, nevertheless, when the excess of jurisdiction involves irreparable injury to the defendant. State ex rel. v. Ross, 122 Mo. 435, 457; State ex rel. v. Elkin, 130 Mo. 90, 109; State ex rel. v. Wood,

155 Mo. 425, 453. (4) The destruction of the business of petitioners constituted an irreparable injury without other adequate remedy by appeal or writ of error. State ex rel. v. Eby, 170 Mo. 526; Railroad v. Wear, 135 Mo. 257. (5) The recitals in the petitions for injunction, of the coming Louisiana Purchase Exposition in St. Louis, are wholly disingenuous and misleading, as no relief is sought with reference to any specific ticket or tickets issued or to be issued for such exposition, and the injunction order of the circuit court is not limited to any such specific ticket or specific occasion. The recital is obviously misleading for the purpose of obscuring the real purpose, that of throttling *in perpetuo* the business of defendants by a universal injunction. 16 Am. and Eng. Ency. Law, 431; Block v. Huggins, 2 Tenn. Ch. 782; Huton v. Granelle, 4 Beav. 130; Clifton v. Robmen, 16 Beav. 355. (6) The right to a prohibition is in nowise affected by the defenses set up in the returns filed in the circuit court. It was our right and duty, while denying the jurisdiction *in limine,* to show that upon plaintiff's own theory the equities relied on for an injunction did not exist. State ex rel. v. Oliver, 163 Mo. 679; High's Extraordinary Legal Remedies, sec. 765; State ex rel. v. Aloe, 152 Mo. 484. (7) It is for the Legislature and not for the courts to determine, in advance, the right of defendants to engage in the business of buying and selling unused railroad tickets. It is the exclusive province of the lawmaking power to lay down and define rules of civil conduct which are unrelated to the judicial protection of existing property rights or issues thereon. Montesquieu on Spirit of the Law, p. 174; Mill on Representative Government, 326; 1 Pomeroy's Equity, 65; Cooley's Principles of Constitutional Law, p. 44; 13 Law Quarterly Review, p. 362; Osborn v. Bank, 9 Wheat. 319; Interstate Com. Com. Rep., 1896, pp. 327-344; Jones v. Perry, 10 Yerg. (Tenn.) 72.; Taylor v. Place, 4 R. I. 336; 1 Beach on Injunctions, sec. 20; Hudnett v. Harris,

1 Del. Ch. 349; 1 Blackstone, p. 44; Ellsworth v. Hale, 33 Ark. 633; Bates v. Kimball, 2 Chap. (Vt.) 37; State ex rel. v. Aloe, 152 Mo. 456; Tanner v. Walbeun, 77 Mo. App. 262.    (8)    A court of equity can not enjoin where there is no existent basis of facts affording a present right which is directly threatened by the action sought to be enjoined.   It has no power to enjoin unless the conditions have already arisen and come into being, which could be injured by the acts sought to be restrained.   High on Inj., secs. 7, 9, 10 and 23; State ex rel. v. Aloe, 152 Mo. 479; Business Men's League v. Waddell, 143 Mo. 498.   Therefore, an injunction can not be awarded to allay "mere apprehension."   Church v. Marchof, 10 N. J. Eq. 57; Manfosee Co. v. Garrison, 26 How. Pr. (N. Y.) 448; Walthus v. Rogers, 16 Tex. 410; People v. Canal Road, 55 N. Y. 390; Lester R. E. Co. v. St. Louis, 169 Mo. 227; 16 Am. and Eng. Ency. Law (2 Ed.), p. 361.   So to enjoin trespassers or nuisances, complainant must first show title and present fixed right in himself to the land affected or threatened with injury.   Sullivan v. Moreno, 19 Fla. 200; Western v. M. V. Vie. C. C. Co., 10 W. Va. 250; Gleason v. Village of Jeff., 78 Ill. 399.   (9) · The order of the circuit court involves the substitution of attachments in contempt in its application to future issues of tickets for future occasions in place of the hearing and determination by the chancellor according to the special circumstances of the special case, and, therefore is violative of the fundamental limitations of injunction in remedial procedure.   (10)   This extraordinary and unprecedented order is not warranted for the protection of the business of the railroad companies.   The future occasions when the right to issue excursion tickets may be exercised are not capable of judicial protection until the occasions arise.   The abstract right must assume a concrete form before it becomes property in the judicial sense, capable of judicial protection.   2 Austin on Jurisprudence,

secs. 815, 817; 1 Blackstone 138; State ex rel. v. Associated Press, 159 Mo. 449; St. Louis v. Hill, 115 Mo. 533. (11) The business of the ticket brokers is a lawful business, protected by the constitutional guaranties, and is the outgrowth of conditions created by the railroads themselves, and the incidental evils arising therefrom must be corrected by the exercise of the legislative power, and by the railroads themselves in providing for the redemption of unused tickets. People ex rel. v. Warden, 157 N. Y. 116; Railroad v. Beeves, 30 N. Y. L. J. 21; Fourth Annual Report of Int. Com. Commission, 1890, p. 369; Ninth Annual Report Interstate Commission, 1895, p. 103. (12) There is no judicial precedent sustaining this extraordinary claim for universal and blanket injunction with no concrete case presented for the exercise of judicial power. The cases cited from trial courts of other States in which injunctions have been granted, have all, without exception, rested on the equities growing out of specific occasions and the use of specific tickets therefor; in other words, this attempt to exercise judicial power without a concrete case is without judicial precedent. (13) The interruption and destruction of business by this attempted exercise of legislative power by laying down a rule of civil conduct for the future, with no concrete case presented for the application of the judicial power, is violative of the constitutional guaranties of due process of law in the Federal and State Constitutions. Constitution of the United States, fourteenth amendment; Constitution of Missouri, art. 2, sec. 30; Hunt v. Searcy, 167 Mo. 158; State ex inf. v. Washburn, 167 Mo. 691; State ex rel v. Ashbrook, 154 Mo. 394; State v. Julow, 129 Mo. 172; Brannon on Fourteenth Am., pp. 295-297; Cooley's Constitutional Limitations, 92.

*Geo. P. B. Jackson* for defendants Hough, Judge, and Missouri, Kansas & Texas Railway Company.

(1)    The contention of the plaintiffs that the petitions for injunctions do not show that any "present right" is threatened; that no "concrete case" is presented; and that they do not "exhibit a present controversy as to existing property rights," but are simply endeavoring to secure a judgment of the court whereby to establish a rule for future conduct, is without merit, because:    (a)    The petition for injunction specifically alleges that arrangements have been perfected for the sale of reduced rate non-transferable tickets, and that the Missouri, Kansas and Texas Railway Company has been and is furnishing drovers' return tickets, and that when the injunction suit was brought, the defendants therein were engaged in buying and selling tickets of all of the above kinds, and fraudulently causing them to be used by persons not entitled to use them, and were threatening to continue such practice, all of which implies that the necessary tickets had been prepared and were ready to be furnished to any person desiring to use them.    (b)    But if the tickets had not been prepared, the railway company is entitled to the relief sought, because the injury done is to the property which the railway company has in the right to make such contracts, and in the franchise to carry on its business.    Shoe Co. v. Saxey, 131 Mo. 212; State v. Julow, 129 Mo. 163; Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 Fed. 94; Enoch Morgan's Sons Co. v. Wendover, 43 Fed. 420.    (2)    It is not the law, as claimed by petitioners, that the defective statement of a cause of action deprives the court where the suit is brought of jurisdiction over the same, so that prohibition will lie.

*E. S. Robert* for defendants Fisher, Judge, and Chicago, Burlington & Quincy Railway Company.

(1)   Railroads are compelled to serve all of the public upon the same terms, but are expressly authorized by law to issue non-transferable reduced-rate tickets, provided it offers them to all alike. R. S. 1899, sec. 1127; 1 Sup. R. S. U. S. p. 690, sec. 22; 2 Sup. R. S. U. S. p. 369, ch. 61; Mosher v. Railroad, 127 U. S. 390. (2) Interstate excursion tickets can only be issued where the railroad files its rate sheets with the Interstate Commerce Commission. U. S. Statutes, supra.   (3)   The courts will enjoin ticket scalpers from dealing in non-transferable tickets. Railroad v. McConnell, 82 Fed. 66; Railroad v. Kinner, 47 Ohio Law Bulletin, No. 18, 294; Railroad v. Beekmann, 31 Wash. Law Rep. 715. (4)   Limitations which are reasonable, such as non-transferability, may be imposed on holders of tickets sold below the full one-way rate.   3 Wood on Railroads, sec. 347; Mosher v. Railroad, 127 U. S. 390.   (5)   Prohibition will not lie because the court has erroneously exercised its jurisdiction, but only in cases where it has no jurisdiction at all or has exceeded that with which it is vested.   Davidson v. Hough, 165 Mo. 561; State ex rel. v. Aloe, 152 Mo. 466; Wand v. Ryan, 166 Mo. 646; State ex rel. v. Zachritz, 166 Mo. 307.

*Johnson & Richards* and *Charles Claflin Allen* for defendants McDonald, Judge, and Chicago & Alton Railway Company.

(1)   The alternative writ of prohibition in this case should be quashed, because the court below had jurisdiction of the parties and of the subject-matter, and full power and authority to issue the injunctions which were issued by the several divisions of the St. Louis Circuit Court.   Prohibition only lies to restrain usurpation of judicial power, i. e., assumption or excess of jurisdiction. R. S. 1899, sec. 4488; 23 Am. and Eng. Ency. Law. (2 Ed.), p. 195. (2) There is no excess of jurisdiction by the circuit court in the case at bar.   (a)   Plaintiff here

claims that the court below exceeded its jurisdiction, because the petition stated no cause of action. If so, it was the subject of demurrer, and this proceeding can only be considered as a substitute for a demurrer in the court below. (b) But plaintiff says the reason why the petition in the injunction suit does not state a cause of action is, that no specific forms of tickets are designated, and no specific relief is prayed for as to any specific form of contract. It follows that if the plaintiff below had pleaded specific forms of tickets, the petition would have been good. This was expressly conceded by counsel for plaintiff during the oral argument. If so, the thing complained of is not the statement of a defective cause of action by the plaintiffs below, but the defective statement of a good cause of action. Such defect can be reached by motion to make more definite and certain in the injunction proceeding below. Whereas, if the writ of prohibition should be made permanent in this cause, no right to amend the pleading as permitted by the statutes and the practice in this State, will be open to the plaintiffs in the court below—defendants here. State ex rel. v. Scarritt, 128 Mo. 339. (3) Plaintiff claims as a ground for prohibition that his business will be ruined by the injunction. (a) He is not enjoined from selling tickets which are transferable; therefore his legitimate business is not interfered with by the injunction, and can not be. (b) If the wrongful and fraudulent part of his business is interrupted or destroyed by the injunction, he can not complain of that in this court as a basis of jurisdiction for a writ of prohibition. (4) Plaintiffs here aver in their return to the order to show cause below, that they are engaged in business as ticket brokers, and have the number of "non-transferable" tickets in their possession; and they claim the right to sell them under a "custom" or "practice" to treat them as transferable. That admits the whole issue of fact. (a) Therefore, specific forms are immaterial. The plaintiffs below allege that the scalpers are selling and

will sell "non-transferable" tickets. Defendants admit it. Plaintiffs below say that the defendants are selling in fraud of the rights of the plaintiffs and to the irreparable injury of their "business" and property rights. Defendants deny the allegation of fraud. Thus is presented a clear issue of fraud in a proceeding in equity to protect private property. (b) Courts of equity have always entertained jurisdiction to issue injunctions for the protection of private property. And fraud has been a favorite ground for equity jurisdiction since courts of chancery began to sit. (c) Plaintiff's business is continuously affected by the fraudulent acts of defendants; has been so affected for years; and is threatened to be so affected in the future. Injuries to "business" are the subject-matter of injunction. Shoe Co. v. Saxey, 131 Mo. 212; Vegelahn v. Guntner,167 Mass. 99; Springhead Spinning Co. v. Riley, L. R. 6 Eq. 551; Sherry v. Perkins, 147 Mass. 212. (d) The railroad company has a property in tickets. State v. Corbett, 57 Minn. 345; People v. Warden, 157 N. Y. 116. (5) Plaintiffs in the injunction suits below are not seeking to enforce mere common-law rights of property. Their rights are *sui generis;* are fixed by statutes, State and National, and are inextricably interwoven with the rights of the public. (a) Railroads are compelled to serve all of of the public upon the same terms, but are expressly authorized by law to issue non-transferable tickets at reduced rates, provided such tickets are offered to all of the public alike, and the legal character of these non-transferable "mileage," "excursion," and "commutation" tickets is fixed by statute. R. S. 1899, sec. 1127; 1 Sup. R. S. U. S. p. 690, sec. 22; 2 Sup. R. S. U. S. p. 369, ch. 61; Mosher v. Railroad, 127 U. S. 390. And it is only when tickets are sold below tariff rates that they are "non-transferable" in law and void in the hands of anyone except the original purchaser. Mosher v. Railroad, supra. (b) Railroads are compelled by statute to file with the Interstate Commerce Commission their

rate sheets and joint tariffs. 1 Sup. R. S. U. S. p. 684. And after joint rates on interchangeable mileage tickets have been filed with the Interstate Commerce Commission, it is a penal offense for the railroad company to collect or receive from any person a greater or less compensation under such joint interchangeable mileage tickets than the rate filed with the commissioners. 2 Sup. R. S. U. S. p. 369. (c) The courts have repeatedly enjoined ticket brokers from dealing in "non-transferable" tickets. Railroad v. McConnell, 82 Fed. 66; Railroad v. Kinner, 47 Ohio Law Bulletin, No. 18, p. 294. (d) Even if the court is not satisfied that the injunction as issued should stand, that question is not properly before this court in the present proceeding. It can be raised on writ of error or appeal. Meanwhile, the plaintiffs here are fully protected by the bonds given in the court below. (6) "A writ of prohibition is not a writ of right; before it is granted, two things must appear: first, that the law sanctions it; and, second, that a sound judicial discretion commends it." Davidson v. Hough, 165 Mo. 575; High on Ex. Rem., sec. 765; State ex rel. v. Levens, 32 Mo. App. 520; State ex rel. v. Aloe, 152 Mo. 484. "It is a fundmental principle that this writ is not allowed to usurp the functions of an appeal, writ of error or certiorari. State ex rel. v. Lewis, 76 Mo. 376; State ex rel. v. Thayer, 80 Mo. 436. The motion for judgment upon the return must be held to admit all the facts properly pleaded. State ex rel. v. Elkins, 130 Mo. 103." Wand v. Ryan, 166 Mo. 649. "The action (sought to be prohibited) is one of purely equitable cognizance. Such actions are transitory in nature, and the process of the courts of equity therein operate in personam, and when such courts acquire jurisdiction of the person, they have jurisdiction of the subject-matter." State ex rel. v. Zachritz, 166 Mo. 313; Olney v. Eaton, 66 Mo. 563; State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Withrow, 154 Mo. 397; State ex rel. v. Gill, 137 Mo. 681; State ex rel. v. Hirzel, 137 Mo. 435; State ex

rel. v. Oliver, 163 Mo. 679; State ex rel. v. Wood, 155 Mo. 425; State ex rel. v. Railroad, 100 Mo. 59.    (7)    Plaintiffs have had "due process of law" in its highest form: a court of equity.    "The words 'due process of law,' when applied to judicial proceedings, as was said by Mr. Justice FIELD, speaking for this court, 'means a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights.'"    Scott v. McNeal, 154 U. S. 46; Paving Co, v. Ridge, 169 Mo. 384; Burdick v. People, 149 Ill. 605.

MARSHALL, J.—These are original proceedings against the defendant judges of the circuit court of the city of St. Louis, to prohibit them from further entertaining jurisdiction in certain injunction suits, pending before them, in said court, wherein the railroads that are joined as defendants are plaintiffs, and the plaintiffs herein are the defendants.    A preliminary rule was issued by one of the judges of this court, the defendants made return thereto, and the plaintiffs moved for judgment upon the pleadings.

The controversy is this:

The defendant railroads have systems extending over a large portion of the United States and have termini in St. Louis.    The plaintiffs herein are ticket brokers engaged in business in St. Louis.    The railroads, each for themselves, instituted about fifty suits in the circuit court of St. Louis asking injunctions against the plaintiffs herein, and other ticket brokers in that city. The petitions are practically alike.

The substance of the averments of the petition is fairly stated by one of the counsel for the defendants to be as follows:

"That in the year 1904 the Louisiana Purchase Exposition Company will hold a World's Fair at St. Louis, to which all of the nations of the world have been in-

vited, to which 23,000 citizens have subscribed, and the Federal government contributed $5,000,000, the city of St. Louis $5,000,000, the subscribers $5,000,000, and the State of Missouri $1,000,000, for a State exhibit. That various meetings and ceremonies will take place before and during the fair. That to enable the people to attend the fair and such meetings and ceremonies, excursion tickets will be issued from time to time; that they will attend in such large numbers that it is impracticable to secure their signatures to the return parts of the tickets. That for the same reason identification is impracticable.

"That in addition to these World's Fair tickets, said railroad from time to time, issues non-transferable 'excursion' tickets, 'mileage' tickets and 'commutation' tickets below the regular one-fare rate for various meetings, assemblages and purposes. That such tickets are by their express terms, set forth therein, good for the transportation of the original purchaser alone and void in the hands of others. That by virtue of the terms of said tickets, if presented by one other than the original purchaser, the conductor must lift the same. That the sale of such non-transferable tickets, where they are interstate, is forbidden by the interstate commerce law, and where within the State, is forbidden by the laws of the State of Missouri, because the purchaser would thereby get a lower rate than the general public. That the sale of the same is not only void for that reason, but because it is a fraud on the purchaser and on the railroad company or a joint fraud on both. That where persons purchase such tickets innocently it frequently leads to their being ejected from trains because said scalpers represented such tickets to be good, and that where the purchaser knows they are non-transferable and void in the hands of persons other than the original purchaser, the buyer deceives the conductor and servants of the railroad, and that it is a fraud on the plaintiffs. That some of the tickets so issued have a return coupon,

which must be presented to the agent before presentation for the return trip.

"That the defendants are residents of the city of St. Louis and engaged in the business of ticket broker or scalper in the city of St. Louis, and that they have full knowledge of the character of such tickets, that they are issued at a special rate, and that they are null and void in the hands of any person other than the original purchaser. That they either deceive the buyer by representing them as good or deceive the railroad by aiding the buyer in using them, and that Herman Schubach is engaged in the business of selling such tickets and proposes to continue the sale of the same and regularly deal in the sale of said non-transferable tickets, thus defrauding the railroad or the buyers of the ticket, or both.

"That by reason of the impossibility of detecting such frauds the plaintiff is subjected to recurring loss and injury and the innocent buyer to pecuniary loss, annoyance and humiliation. That the burden cast on the conductors of detecting such fraudulent tickets, subjects the railroad company to constant danger from suits for damages for unavoidable errors and subjects the railroad and public to interruption and delay in the operation of trains.

"That the railroad company has no way of discovering who the persons are who so defraud it, or who are thus defrauded, by the purchase of such non-transferable tickets, because of the impossibility of securing evidence of such frauds, and that if such frauds were detected it would lead to a multiplicity of suits. That the defendants are financially irresponsible and no judgment at law could be collected. That in consequence there is no adequate remedy at law.

"That it is the constant practice of the plaintiff and its connecting lines to issue tickets at reduced rates to the traveling public, which by their terms are non-trans-

ferable and constitute a special contract between the plaintiff and the original purchaser whereby the original purchaser agrees that the ticket shall not be transferred by him to any other person.

"That the defendants are and for a long time past have been engaged in the business of buying, selling and dealing in such tickets and inducing the original purchasers to sell the same."

The prayer of the petition is that the defendants therein (the ticket brokers) be enjoined from buying, selling or dealing in tickets issued by the railroad, plaintiff therein, which by the terms thereof are non-transferable.

The judges severally issued rules upon the defendants therein to show cause on a day certain why injunctions should not issue as prayed. Upon the return being made to the rule, the six circuit judges before whom such injunction cases were pending sat together, and the matter was fully argued before them, with the result that they determined that temporary injunctions should issue, and accordingly each of the judges, separately, issued injunctions in the following form:

"Now at this day come the parties hereto, by their respective attorneys, under the order to show cause heretofore issued herein, and submit the application for a temporary injunction to the court upon the petition and the return of the defendant to the order to show cause and the court having duly considered the same and being sufficiently advised in the premises, doth order that upon plaintiff's giving bond in the sum of twenty-five hundred dollars conditioned according to law, with good and sufficient surety or sureties to be approved by the court, or judge or clerk thereof in vacation, the defendant, his agents, servants and employees and all other persons acting for him either directly or indirectly, be, and are hereby enjoined and restrained until the further order of the court from buying, selling, dealing in or soliciting the purchase or sale of any mileage passenger ticket, or

any part thereof, or any excursion passenger ticket, or any part thereof, or the return coupon thereof, or any part thereof, or any commutation passenger ticket or any part thereof, now being issued, or heretofore issued and sold, or which may hereafter be issued and sold by plaintiff for passage over its railroad, or issued by any other railroad for use over plaintiff's road, or any part thereof, where any of the above described tickets were sold and where it appears upon any such ticket, coupon or return ticket that same was issued and sold below the regular schedule rate under contract with the original purchaser entered upon such ticket and signed by such original purchaser and that such ticket is non-transferable and void in the hands of any other person other than the original purchaser; and from soliciting, advertising, encouraging or procuring any person other than the original purchaser of such ticket to use or attempt to use the same for passage on any train or trains of the plaintiff. Provided, however, this order shall not apply to the sale of any such aforementioned and described tickets that were purchased by defendant from plaintiff or any of plaintiff's duly authorized agents and not for defendant's use as a passenger over plaintiff's road.''

Thereupon the defendants in such injunction suits applied to one of the judges of this court for writs of prohibition to prohibit the said judges from enforcing such injunctions and from entertaining further jurisdiction of such injunction suits. The petitions for prohibitions are alike, and predicate a right of action upon a charge that the circuit judges had no jurisdiction or acted in excess of their jurisdiction in the premises in the following respects:

''Plaintiff states that in and by its aforesaid proceedings said court and defendant, as judge thereof, transcended and exceeded its lawful jurisdiction in the following particulars:

''1. Said petition for injunction stated no matter or thing upon which a court, exercising equity powers,

could grant any injunction, or the particular writ awarded in this case.

"2.    Said petition for injunction is not based upon any specific property for the protection of which judicial protection is sought.    But it is attempted by the injunction sought and granted in said cause to lay down a rule of civil conduct, so that the business of this plaintiff would be permanently destroyed by the exercise of the judicial power thus exercised without reference to any specific existing property.

"3.    Said petition for injunction and the temporary injunction thereon granted in prescribing a rule of civil conduct regardless of any existing property, is an attempted usurpation of the legislative power of the State, which alone can prescribe a rule of civil conduct covering future transactions, having no relation to existing properties and their judicial protection.

"4.    That the necessary effect of this attempted regulation of civil conduct by a blanket injunction covering property rights hereafter to be created and acquired, will be the substitution of summary hearings in contempt for the orderly determination of controversies by court or jury when controversies as to existing property rights are presented for hearing.

"5.    Said injunction serves the purpose of taking the property of plaintiff without 'due process of law.'

"6.    Said injunction is against the law of the land and thereby, if permitted to stand, destroys a lawful avocation and business of plaintiffs.

"7.    Plaintiff is remediless in this, that his business is interrupted and destroyed by the granting of the injunction herein, and that the remedy by motion to dissolve in the circuit court is wholly inadequate, as even if said injunction should be dissolved, it may be maintained in force by an appeal and in any event plaintiff's business would be wholly destroyed before the final determination of the same could be reached by this unwar-

ranted and illegal procedure of said court, outside of its
lawful jurisdiction.''

The defendants made return to the preliminary
rules, setting up the proceedings in the injunction cases
in the circuit court, and justifying the action of the cir-
cuit judges, and maintaining the jurisdiction of that
court.   The plaintiffs by way of replication, ask that
the preliminary rule in prohibition be made absolute,
and thus the issues are made up.

For the sake of brevity the plaintiffs herein will be
hereinafter referred to as the ''ticket brokers,'' and the
defendant railroads as the ''railroads.''

## I.

Reduced to its essentials and crystallized, the ticket
brokers' position is, that no ''concrete case'' is stated
in the injunction suits, which a court has power to deal
with.

Or otherwise stated, that there is no existing con-
troversy between the ticket brokers and the railroads,
which could constitute a cause of action, upon which a
court could act.

Or amplified, that a court of equity has jurisdiction
to issue injunctions as a class, but it has no power to is-
sue an injunction where only  abstract rights are  in-
volved, or where the injury is merely apprehended or
feared and is not immediate, impending and imminent,
and that to authorize a court that has jurisdiction to act,
''there must be an existent basis of facts affording a
present right which is directly threatened by the action
sought to be enjoined.   It has no power to enjoin unless
the conditions have *already* arisen and come into being,
which could be injured by the acts sought to be re-
strained;'' and that courts can not determine the rights
of parties *in advance* of an actual, existing controversy
concerning them.

Or as counsel happily express it: "The *abstract right* must assume a *concrete form* before it becomes *property* in the judicial sense, capable of judicial protection."

These are fundamental essentials in the law, and it has always been true that there must be an actual, live subject-matter, as well as actual live parties, to every suit. . It is also true that courts of equity alone have power to issue injunctions, and that they never exercise this power to allay mere apprehensions of injury, but only when the injury is imminent and irreparable. [Business Men's League v. Waddill, 143 Mo. 495; Lester Real Estate Co. v. St. Louis, 169 Mo. l. c. 234.]

The railroads and the circuit judges do not controvert these propositions.

The matter, therefore, compresses itself into the question whether or not a basic subject-matter, over which a court of equity has jurisdiction, was presented to the circuit court for adjudication by the injunction suits. That is, whether a matter was presented which that court has power to deal with, and not whether such a matter was inartificially or defectively presented. In other words, the question is one of jurisdiction and not of pleading, for if the court had jurisdiction over the subject-matter, it had the power to decide whether the pleadings were or were not properly drawn, and also to decide whether or not the plaintiff was entitled to the relief sought. If a court has the power to act, its jurisdiction is in no wise impaired by the consideration whether it acted in accordance with the law or erroneously. Given the jurisdiction, all else is a mere matter of error, to be corrected on appeal. Or, further illustrated, if the court has jurisdiction over the subject-matter, it has the power to decide whether the petition does or does not state a cause of action, and the mere failure of a petition to state a cause of action or the defective statement of a good cause of action, in no way affects the jurisdiction

of the court.   [State ex rel. v. Scarritt, 128 Mo. 1. c. 339-340.]

The crucial question, therefore, is, do the petitions of the railroads for injunctions against the ticket brokers present a concrete or an abstract case?

In the solution of this question the decision of the Supreme Court of the United States, in the case of Mosher v. Railroad, 127 U. S. 390, establishes the first postulate of the proposition. It is true, as the ticket brokers claim, that that was not an injunction suit, but the form of the action is immaterial, for it is the legal principles deduced and the rules announced that are important and pertinent.

That was a suit for damages for being put off a train.   The plaintiff purchased from the defendant, at St. Louis, a ticket from St. Louis to Hot Springs and return.   The ticket by its terms required that the original purchaser should identify himself to the satisfaction of the defendant's agent at Hot Springs, and that the return ticket should be officially signed and stamped by the agent at Hot Springs, all of which the original purchaser agreed to "in consideration of the reduced rate at which this ticket is sold."   The plaintiff failed to so identify himself, and failed to have the return ticket so stamped, and in consequence was put off of the train, and he sued for damages.   The lower court sustained a demurrer to the petition, and the Supreme Court of the United States affirmed the judgment, holding that a railroad company has a right to make a contract with the purchaser of a reduced-rate ticket, that the original purchaser shall so identify himself, and that the return ticket shall be so signed and stamped, and that the reduced rate at which the ticket is sold affords a consideration for such a contract.

In other words, that for a valuable consideration a railroad may enter into a contract that the ticket sold to the passenger shall be non-transferable, and that the return portion shall not entitle even the original pur-

chaser to a return trip, unless he so identifies himself and has the return ticket so stamped.

This is manifestly upon the principle that when persons, *sui juris,* enter into contracts that are not prohibited by law, based upon a valuable consideration, they must live up to them, and that each has a property right in the contract which the law will protect. In addition to this, the laws of this State and the interstate commerce laws, while prohibiting discriminations, permit the railroads to issue excursion or commutation tickets, at special rates. [R. S. 1899, sec. 1127; Supp. R. S. U. S., vol. I, p. 690, sec. 22, and vol. II, p. 369, chap. 61.]

The second postulate in the case is, that the petitions for injunctions recite that World's Fair excursion tickets, non-transferable excursion tickets, mileage tickets and commutation tickets have been issued or will be issued, from time to time, based upon a consideration of reduced rates, which by their express terms are to be good only in the hands of the original purchaser, and that it is or will be impossible, impracticable, or at any rate unbearably inconvenient, for the original purchasers to be identified in St. Louis and have the return ticket stamped, or for the train conductors to determine whether the person attempting to ride on such return ticket is the original purchaser or not; that it would be a fraud upon the railroads for any one except the original purchaser to ride upon such return tickets, and a fraud for the original purchaser to sell such return tickets to the ticket brokers and for the ticket brokers to sell such return tickets to any third party to be by him so used or upon the representation that they would entitle the buyer to so ride thereon; that in the nature of things the railroads could never ascertain that such frauds were about to be committed until after the trains had left St. Louis and such tickets were presented to the train conductors, and then it would be too late to ask for or receive injunctive relief against the perpetrators of such

frauds, and that the ticket brokers are insolvent so that no adequate remedy at law could be had against them; and further that even if such frauds could be discovered in time to ask specific relief in each case, it would involve the prosecution of a multiplicity of suits to meet the exigencies.

This postulate also includes the fact that the injunctions issued by the circuit court enjoined the ticket brokers from buying, selling or dealing in any mileage tickets, and excursion tickets or the return coupon thereof, or any commutation ticket, now issued or hereafter to be issued, "where it appears upon any such ticket, coupon or return ticket that the same was issued and sold below the regular schedule rate under contract with the original purchaser entered upon such ticket and signed by such original purchaser that such ticket is non-transferable and void in the hands of any other person other than the original purchaser."

And bearing upon this proposition it is important to note in this connection that while the return of the ticket brokers to the rule to show cause why an injunction should not issue, denies the power of the court to issue an injunction, on the ground that no concrete case is presented by the petition, it then very inconsistently sets up that it has been the common practice of the railroads to issue mileage tickets, excursion tickets and commutation tickets which are stamped on their face, nontransferable, but that the practice and understanding of the ticket brokers all over the United States is, that such tickets may be transferred or sold, and that the name of the original purchaser may be signed by any one on the return ticket, and that the ticket brokers in the litigation have a number of such tickets, which they have purchased in good faith and under the belief that they are transferable and would be honored by whomsoever presented, and that the injunction asked would render such tickets valueless and would destroy the business of the

ticket brokers, and therefore they ask the protection of the court in that regard.

Upon the doctrine of "aider," therefore, the return of the ticket brokers helped out the insufficiency, if any, that existed in the petition, and unquestionably made a concrete case as to the tickets that are now held by the ticket brokers and presented a live subject-matter, between live parties, which the court had power and jurisdiction over. Therefore, it can not now be said that the circuit court had no jurisdiction and as that court had jurisdiction, *quoad* such tickets, prohibition will not lie, for a writ of prohibition can never be made to perform the functions of an appeal or writ of error, and lies only where a court, or tribunal clothed with judicial powers, acts in relation to matters over which it has no jurisdiction or having jurisdiction over the subject-matter, acts in excess of its jurisdiction. [State ex rel. v. Aloe, 152 Mo. 466; Davison v. Hough, 165 Mo. 561; State ex rel. v. Eby, 170 Mo. 497.]

The case might be allowed to rest here, but there are other cogent, decisive and imperative propositions which must be adjudicated to make the case complete.

It will be observed that reference is made in the petition for an injunction, to the approaching World's Fair in St. Louis, and it is averred that in order to make it possible for persons of ordinary means to attend it, the railroads have been induced by the officials of the fair to agree to issue excursion tickets, at greatly reduced rates, to all who desire to attend the fair or the various meetings, conventions, etc., that will be held in St. Louis at that time. And counsel for the railroads point out that the courts have issued injunctions against ticket brokers prohibiting them from dealing in non-transferable tickets that have been issued by the railroads on the occasions of the Nashville Centennial Exposition in 1897 (Railroad v. McConnell, 82 Fed. 66), the meeting of the Grand Army of the Republic in Cleveland (Railroad v. Kinner, 47 Ohio Law Bul. 294),

the meeting of the Grand Army of the Republic in Washington (Penn. R. R. v. Beekman, 31 Washington Law Reporter 715), the meeting of the Confederate Veterans in New Orleans, in May, 1903 (L. & N. R. R. v. Bitterman, 128 Fed. 176), the meeting of the National Teachers' Association in Boston, in July, 1903 (Boston & Maine R. R. Co. v. Fogg, Super. Ct. Suffolk Co. Mass.), and the Dedicatory Exercises of the World's Fair at St. Louis, in May, 1903 (Wabash R. R. v. Wasserman, decided by Hon. H. D. Wood, of the circuit court of the city of St. Louis).

Counsel for the ticket brokers meet this by saying, first, that all those cases were decided by courts of inferior jurisdiction; second, that in the case of People ex rel. Tyroler v. Warden of Prison, 157 N. Y. 116, the Court of Appeals of New York held a statute that prohibited any one except common carriers and their agents from selling tickets for passage on railroads or vessels, to be unconstitutional; third, that, in the case of Delaware, Lackawanna & Western R. R. v. Frank, 110 Fed. 689, the United States Circuit Court for the western district of New York, denied an injunction against ticket brokers as to special tickets for the Pan-American Exposition at Buffalo, on the ground that the railroads had unlawfully combined to fix rates for such exposition; fourth, that in New York Central & Hudson River R. R. Co. v. Reeves, decided October 15, 1903, and reported in New York Law Journal of October 24, 1903, vol. 30, p. 21, Judge LAMBERT, of the Supreme Court of New York, denied an injunction against the ticket brokers which sought to prohibit them from dealing in tickets that were non-transferable on their face, and held that the purchaser of such a ticket had a property interest in the ticket, which he could sell, notwithstanding that by the terms of his contract with the railroad the ticket was on its face non-transferable, and that while the railroad could lawfully refuse to transport the transferee or any

other person than the original purchaser, on the ticket, it was not entitled to an injunction to prevent the ticket brokers from buying and selling such tickets; fifth, that in all the cases cited by counsel for the railroads "a special injunction issued under the special circumstances of the special ticket for the special occasion." Or, otherwise stated, that upon special occasions the railroads can lawfully issue special tickets at reduced rates, which are non-transferable, and which the ticket brokers may be enjoined from dealing in, but that when the railroads issue special tickets, which upon their face show the contract between the purchaser and the railroad to be that they are issued at reduced rates and are not transferable, such tickets may be dealt in by the ticket brokers, and the courts can not interfere, because they do not relate to a special occasion, such as an exposition, a meeting of the Grand Army of the Republic, or of the Confederate Veterans.

In other words, that the jurisdiction of a court of equity to issue an injunction in such cases depends upon the *occasion* that gave use to the issuance of such tickets, and that if the petition for an injunction recites that special tickets have been issued for a special occasion which appear on their face to have been issued at special rates and to be used by a specially named person, a concrete case is presented wherein the court can enjoin the ticket brokers from dealing in them, but if a special ticket is issued which appears on its face to have been issued at a special rate and to be used by a specially named person, but which was issued generally and not for a special occasion, only an abstract right is involved and a court of equity has no jurisdiction, and a writ of prohibition will lie against it.

Of course it must be understood that this is not the way the counsel for the ticket brokers state the matter, but it is the everyday meaning and result of their contention.

But even if the contention of counsel for the ticket brokers that such special tickets must relate to a special occasion be true, the writ of prohibition asked herein would have to be denied as to all the railroads except the Missouri Pacific, for all except that road aver that they have issued or are about to issue such special tickets for the special occasion of the World's Fair in St. Louis, in 1904. True they say they also intend to issue such special tickets from time to time, and the Missouri Pacific railroad does not refer to the World's Fair at all.

However, to allow this case to go off upon any such consideration or without squarely meeting and deciding it in its entirety, would not be subserving the ends of justice.

Broadly stated, therefore, the question for decision is, whether a petition by a railroad for an injunction against a ticket broker to restrain him from dealing in special tickets, which recite upon their face that they are issued at reduced rates and are non-transferable, but which do not relate to any particular occasion, states a concrete case which a court of equity has jurisdiction to hear and decide. If it does, the writ of prohibition asked for herein should be denied. If it does not, the writ should go.

The power to contract, concerning a legal subject-matter, carries with it the right to make any kind of a contract in relation thereto that the contracting parties may agree upon. The power being unlimited, the nature and character and terms of the contract to be made and the occasion that gives rise and the business necessities or exigencies that prompt it, are all matters of private convention between the parties. The power to limit any kind of a contract in its operation to the contracting parties, and to exclude from its benefits any third persons, or to limit the contract as to the time it shall continue, or to leave it unlimited as to time, is recognized in law. Thus, a lease may prohibit the lessee from assigning, transferring or subletting the

premises, either for the whole or any part of the term. A co-partnership agreement necessarily excludes the right of any member to sell his interest and thereby substitute the purchaser in his place as a member of the firm, and such agreements may be limited or unlimited as to duration. A contract of hiring gives no right to either party to assign or transfer his interests or rights under the contract, and such contracts may be limited or unlimited as to duration. These illustrations are made, not because they constitute similar cases to the case at bar, but because they show that when a right to contract at all, concerning a particular subject-matter, is conferred by the law, and the right so conferred is unlimited, or when the right to so contract arises out the natural rights of man, it is purely a matter of agreement between the contracting parties what the terms, duration, character or nature of the contract shall be.

The Supreme Court of the United States in Mosher v. Railroad, supra, and the statutes of the United States and of this State, recognize the right of a railroad to issue excursion or commutation tickets, based upon the consideration of a reduced rate. The right so conferred is not limited. There is no limitation that such tickets can be issued only upon special occasions. Neither is there any prohibition against the right to make such tickets non-transferable. Persons who do not wish to be so restricted and limited, can purchase the usual unlimited, unrestricted ticket and pay full price therefor, and then sell the unused portion thereof. But no one has any right to buy a special ticket at a reduced rate, which on its face recites that it is non-transferable and that it is supported by the consideration of a reduced rate, and thereby agree to such limitations, and thereafter violate his agreement by transferring it to another, or to complain that he has not the right to transfer it. And no third person can acquire any right or interest or power or claim in or to the ticket or to the privileges conferred thereby other than the original purchaser pos-

sessed or could confer under it, and if the original pur-
chaser had no power to transfer it, no assignee of such
purchaser could acquire any rights under it, for the
original purchaser could convey none. It is wholly
illogical and sophistical to say the original purchaser
has a property right in the ticket—the piece of paper
on which the ticket or contract is printed—which he can
sell and transfer, but that the assignee acquires thereby
no rights against the railroad, and it can refuse to trans-
port him. Such reasoning confuses the piece of paper
upon which a contract is written, with the agreement of
the parties, and erroneously separates the evidence of
the contract from the contract itself. Of course any
man can physically pass the piece of paper on which
any kind of a contract is written, to another, but that
will give such other person no rights under the contract
that is written on the piece of paper, if the contract itself
is non-transferable.

It follows, therefore, that under the law it is com-
petent for a railroad to issue special tickets, based upon
reduced rates, and to make them non-transferable, and
valid only in the hands of the original purchaser, and
that such tickets may be limited as to time, or as to
occasion, or they may be unlimited as to time or occas-
ion, and that the original purchaser of such tickets can
not assign or transfer such tickets or any rights what-
ever thereunder, to any third person.

It also follows that if any person buys such special
ticket, and sells it to a third person, to be used by him
or another, the railroad can invoke the aid of a court
of equity to cancel the contract because of the fraud
thus perpetrated, or, if the ticket is used by another, it
can sue for damages for the breach of such contract.

It also follows that if such a case at law or such a
suit in equity, as to a single such ticket, presents a con-
crete case, over which a court has jurisdiction, a con-
crete case may likewise be presented if it relates to all
such special tickets, whether they were all so purchased

and so attempted to be transferred by the same person or not. To illustrate, if a railroad should issue a thousand such special tickets, and if one ticket broker should purchase the whole issue, and thereafter undertake to throw them on the market and sell them contrary to his agreement, or should actually sell them, and if the railroad company should invoke the aid of a court of equity or of a court of law, in the one case or the other, there would be no room for doubt that a concrete case would be presented, which the court would have jurisdiction to decide.

But counsel for the ticket brokers, inferentially, say that while such conditions might present a concrete case, the petitions for injunction in these cases, and the injunctions issued by the court, cover not only such tickets as have been issued and sold, and as to which there is therefore an existing contract and hence a right of property in the contract, but that they also cover such special tickets as may hereafter be issued, from time to time, and as to which there is no contract and no property right, and which have not been sold and may never be sold, and, therefore, no concrete case is presented, and that the injunctions issued are "blanket injunctions"—as counsel call them—which undertake to prescribe a rule of civil conduct—which the Legislature alone has power to prescribe—and to punish any infraction of such rule, by contempt proceeding, instead of by the usual remedies provided for a breach of such rules, and that it is therefore "government by injunction" instead of according to laws regularly enacted and enforced.

If this contention is well founded, a writ of prohibition could not be too quickly issued by this court.

But there is no proper foundation in this case for such well-known and generally accepted principles of law to apply to, and the injunction issued by the circuit court does not offend against these principles.

The injunction applies to all such special tickets

as have heretofore been issued, and to such as are now being issued, and which have already been sold, and it applies also to all such special tickets as may hereafter be issued and sold.

That is, the injunction applies only to such tickets after they have been sold, and after a contract has been entered into, and after property rights under the contract have arisen, and after a controversy in relation to such property rights has arisen, and after an injury to such property rights has been threatened by the ticket brokers, and after such injury has become imminent, and under circumstances and conditions set out in the petition which show, prima facie, that the damage resulting to such property rights by the threatened, but as yet unperformed, acts and conduct of the ticket brokers, would be irreparable, and such as the law affords no adequate remedy for.

Such averments in a petition state a concrete case in equity, which the court has power to deal with. In fact the original and primary office of a writ of injunction is to prevent a wrong, an injury, being done. Therefore, if the contention of counsel for the ticket brokers in this regard, that there can be no concrete case until the defendant has already acted, be well taken, it follows necessarily and logically that a preventive injunction can never issue, and the result of so holding would be to abolish preventive injunctions altogether.

It has already been made clear that the law affords no adequate remedy in cases of this kind, because of the insolvency of the ticket brokers, and because of the nature of the business and the frauds threatened upon the railroads, and upon innocent third persons who might be induced to purchase such tickets from the ticket brokers, and because of the hundreds and thousands of suits that would be necessary to redress the invasion of the rights of the railroads under such contracts, by the

ticket brokers, and because it would not be possible in the nature of things for the railroads to discover the frauds in time to ask preventive or injunctive relief.

"An injunction is a judicial process issuing out of a court of chancery, whereby a party is required to do or to refrain from doing a particular thing. The most ordinary form of injunction is that which operates to prevent the performance of an act. The other form of injunction commands that an act shall be done." [16 Am. and Eng. Ency. Law (2 Ed.), p. 342.]

And section 3649, Revised Statutes 1899, provides that the remedy by writ of injunction shall exist "to prevent the doing of any legal wrong whatever, wherever in the opinion of the court an adequate remedy can not be afforded by an action for damages."

By this, of course, is meant in any case that falls within the class of cases that are properly cognizable in a court of equity. Cases involving threatened frauds, where the defendant is insolvent and the threatened injury would be irreparable, or where the redress of the injury would result in a multiplicity of suits, fall within the class of cases properly cognizable in courts of equity. [Sylvester Coal Co. v. St. Louis, 130 Mo. 323; Michael v. St. Louis, 112 Mo. 610; 1 High on Injunctions (3 Ed.), p. 12.] The last-named author says: "The prevention of vexatious litigation and of a multiplicity of suits constitutes a favorite ground for the exercise of the jurisdiction of equity by way of injunction."

Originally injunctions were preventive only, and it is only within recent years that a mandatory injunction has sprung into existence. Preventive injunctions necessarily operate upon an unperformed and unexecuted act, and prevent a threatened, but non-existent injury. A concrete case is presented whenever a right of the plaintiff is threatened by the defendant, and the damage would be irreparable, and where protection of that right belongs to the class of cases that are cognizable in

equity.    Of course, criminal cases do not fall within such a class.

Measured by these standards the petitions for injunction asked the preventive aid of a court of equity in respect to rights of the railroad which a court of equity has power to protect against invasion and injury by the ticket brokers, which injury it is alleged is imminent, impending and irreparable; and that this is so is the more clearly shown by the character of the return to the order to show cause, wherein the ticket brokers say they have invaded such rights of the railroads in the past as to such special tickets, and have money now invested in tickets of that character which will be lost if the injunction is granted, and assert an intention and right to continue to deal in such tickets.

Therefore, as to the tickets that have been issued and sold by the railroads and are now held by the ticket brokers, both parties assert a property right therein, and, hence, there is an existent controversy, concerning a legal subject-matter, between live parties, and consequently there is a concrete case presented for adjudication to the circuit court, which it has jurisdiction to decide.

It can not, therefore, be said that the circuit court had no jurisdiction as to those matters.

As to the tickets to be issued and sold hereafter, the railroads have a right to issue and sell tickets of such character as shall express on their face that they have been issued at a reduced rate and are non-transferable, and the ticket brokers assert a right to buy and sell and deal in them notwithstanding the terms thereof, and notwithstanding the original purchaser could confer no rights upon any one thereunder.  There is, therefore, an existent property right of the railroads which the ticket brokers say they intend to invade, the danger is imminent and under the allegations of the petition the injury will be irreparable, and in the very nature of the business the injury can not be adequately redressed

by an action at law, or in any other manner than by a preventive injunction. A proper case for the exercise of the powers of a court of equity, by a preventive injunction, was therefore also presented for the determination of the court as to this branch of the case. And in granting such preventive injunctions the court of equity does not prescribe a rule of civil conduct, nor invade the province of the legislative branch of the government, nor does it establish a "government by injunction." It only does what has already been done by courts of equity since their adoption into the body of our institutions—it enforces the rules of civil conduct prescribed by the organic law or the statute law or that arise naturally and regulate all men, by guarding the rights of one citizen against illegal invasion and irreparable injury by another citizen, and which the citizen of his own force is unable to guard for himself. And in the doing thereof, courts of equity recognize no forms, no technicalities, no delays, and no shadows, but act according to the dictates of good conscience, good morals, good conduct, and good government, and they compel every man to act right, and to respect the rights of others, whether his conscience is quick enough to appreciate the difference between right and wrong or not.

There is no merit in the contention that by granting the injunctions in question in this case, the court has infringed upon the powers of the legislative branch of the government. The court has created no right in any one. The court has enacted no law or rule of conduct. The court has simply protected rights that are natural or were created by the Legislature.

The right asserted by the railroads and denied and threatened by the ticket brokers, is a right that is natural to mankind. It is a right that the Legislature of this State and the Congress of the United States have expressly conferred upon the corporation railroads, and which the Supreme Court of the United States has expressly declared they possess. It is a right that is guar-

anteed to every man by the organic law of the land, a right to contract concerning a legal subject-matter. Such a right is property within the meaning of the law. The ticket brokers deny the existence of that right, and threaten to invade it. The law affords no adequate remedy for such an infringement of such a right. The damage will necessarily and obviously be irreparable. This being true, a concrete case for injunctive relief is presented, and in the granting of such relief it can not justly or fairly be said that the courts invade the prerogatives of the lawmaking power in any manner whatever. That power has already created the identical right claimed, and it is the duty of the courts to protect that right in the same manner and to the same extent that they protect any other property rights that are possessed by any citizen. The railroads are not entitled to, and are not accorded, any right in this regard that is not as fully possessed by any citizen and that would not be protected in the same manner if such protection was invoked by the humblest citizen.

These considerations and conclusions result in holding that the circuit court had jurisdiction to hear and determine the injunction cases, and that it did not exceed its jurisdiction, and, therefore, the preliminary rule in prohibition must be discharged, at the costs of the plaintiff.

*Robinson, C. J.,* and *Brace, Burgess,* and *Fox, JJ.,* concur; *Valliant* and *Gantt, JJ.,* dissent.

DISSENTING OPINION.

VALLIANT, J.—Being unable to concur in the opinion of the majority of the court in these cases, and regarding the principle involved as one of much importance, I feel constrained to state, as briefly as I can, the reasons for my dissent.

I do not question that a railroad company may, under a valid contract, issue a ticket limited to be used

only by the purchaser, or that it may lawfully refuse to honor such ticket for the transportation of anyone except the original purchaser. And possibly a case might arise under such circumstances as would justify a court of equity in interfering to prevent the transfer or sale of such a ticket. No such case occurs to me now.

No one doubts that the circuit court, as a court of equity, has jurisdiction to issue injunctions, and no one doubts that to prevent irreparable injury or a multitude of suits, is ground for equitable relief. I am also ready to concede that if the railroad company were required to wait until a case should actually arise, before calling on the court for an injunction, the remedy would not be so convenient, far-reaching, or so absolutely destructive of the business of the ticket broker as it is in the form given. But conceding all those propositions, I hold that no court has jurisdiction to render a judgment or decree that in effect is but the enactment of a law or to lay down a rule of conduct, to take effect on a cause of action not yet arisen, or to render a judgment in advance, to be applied when the cause of action arises.

The cases made in the petitions on which the railroad companies obtained these injunctions are, in effect, that the railroad companies, in consideration of the World's Fair and other important public events that may occur in the future in St. Louis, are contemplating issuing round-trip tickets for the transportation of persons from any given point in the United States to St. Louis and return, the tickets to be non-transferable and good going and returning only for the passage of the persons to whom they are respectively issued; that each ticket is to recite on its face that it is sold at a reduced rate and in consideration thereof the purchaser agrees not to transfer it, but that the defendants are engaged in the business of buying and selling secondhand railroad tickets and that, in spite of the recitals on the face of the tickets, these ticket brokers are liable to buy them and sell them to persons other than the original purchasers

who will use them in payment of their railroad fares, to the irreparable injury of the railroad companies; that if the railroad companies wait until the tickets are issued and the brokers buy them and sell them, it will be too late to obtain equitable relief because in the very nature of the transaction the deed would be done before the process of the court could be obtained.

On the filing of those petitions and on a joint preliminary hearing the court issued injunctions enjoining the defendant until the further order of the court, from buying or selling tickets that the railroad companies might thereafter issue of the character specified. At the preliminary hearing the defendants urged the proposition that there was no concrete case stated on the face of the petition — nothing to bring the judicial power of the court into action, nothing to give the court jurisdiction. But the court ruled to the contrary.

When a petition is filed in the circuit court which the defendant thinks does not state a case that gives the court jurisdiction, he has no right in the first instance to a writ of prohibition to prevent that court taking cognizance of it, because that court has the first right to decide whether or not the petition states a case within its jurisdiction, and the presumption is that if the court has no jurisdiction of the case stated, it will so decide. And even if the court should erroneously decide that it has jurisdiction, the writ of prohibition will not ordinarily issue, if the rights of the parties can be adequately protected by appeal. But when the court at the very outset not only erroneously decides that the petition is sufficient to give jurisdiction, but renders an interlocutory decree of such effect that it is destructive of the defendant's rights beyond redress by appeal, then the writ of prohibition ought to go. That is just what the court in these cases has done. The temporary injunctions are as effective for the destruction of the rights of the defendants as would be perpetual injunctions on final decree, because, in the very nature

of the proceedings, the causes would not reach the appellate court until after the public occasions mentioned in the petitions had passed.   The defendants have nothing to hope for in the final hearing because there are no facts in issue to which evidence could be addressed to change the mind of the chancellor.   When the cases come on for final hearing, what issue is there to try? Will the court hear evidence to prove that at the time of filing the suits the railroad companies really intended to issue the kind of tickets specified and that they had cause to apprehend, if they should conclude to issue them, that the ticket brokers would buy and sell them? There are no issues of fact, there is nothing in the cases to try on final hearing.   It is said that these injunctions can injure no one, because they are not to take effect until a concrete case arises—until one of the defendants does an act forbidden—then the injunctions cease to be mere abstract fulminations and become concrete judgments.   That is so, but the vice of it is that it is a prejudgment of the case before it has arisen.   Suppose next year a railroad company issues a ticket in the form suggested, and a broker buys and sells it and he is arraigned before the court on a charge of contempt; he comes into court and says, ''I am advised that I had a legal right to buy and sell that particular ticket and I ask for a trial on that issue,'' but the court will look at the ticket and see printed on its face that it was sold at a reduced rate and is non-transferable, and will say to the defendant: ''There is nothing to try; that was settled by a judgment rendered a year ago; the only question before the court now is as to the character and degree of punishment to be inflicted.''   Then if the defendant should say, ''But this ticket was not issued until a year after that judgment was rendered,'' the answer would be, ''This judgment is prospective in its character, affecting not only what has been but what may be; it establishes a rule of conduct for all time, and confers the character of *res adjudicata* upon every transaction involving the buying

and selling of a round-trip railroad ticket upon which the railroad company may have taken the care to have printed on its face that it was sold at a reduced rate and is non-transferable."

Suppose a railroad company should issue a ticket of the kind in question, and then, in order to ascertain if anyone is violating the injunction, should send a detective to a broker to sell him the ticket and send another to buy it and the broker so induced buys and sells, could he not when arraigned in court on a charge of contempt well say, "I bought that particular ticket from an agent of the railroad company, especially authorized to sell it to me, and I sold it to one in like manner authorized to buy it?" Doubtless if he should be allowed to get that far in his defense, the court would not inflict the penalty for contempt upon him, but giving to the decree its natural effect, the act suggested would be *res adjudicata* as well as to that transaction and to any other defense he might desire to make.

It is no answer to this position to say that the court could be relied on to use its discretion to allow the defendant when arraigned to be heard concerning any particular defense he might have. If the court should hear him at all, it would only be *ex gratia;* if the judgment is right, he has no legal right to be heard, because it has already been prejudged that his handling of the ticket was unlawful; the only questions the judgment leaves open are, did the ticket bear those marks, and did the broker buy and sell it? If so, he is guilty.

When a man buys and sells a ticket that was not in existence when the injunction was issued, and he is arraigned in court to be punished by fine and imprisonment for doing so, to say to him that he will not be heard on the proposition that he had a right to do what he did, and to inflict the penalty upon him without giving him such hearing, is to take his money and deprive him of his liberty without due process of law, in violation of both our State and our Federal Constitutions. That is

just what is liable to be done in these cases if the injunctions are taken to mean what they say and are enforced accordingly. It was said in the oral argument by eminent counsel for one of the railroad companies, that the business of these ticket brokers was dishonest, that they were as bad as men who keep "fence houses" where stolen goods are knowingly bought and sold. It is strange, if that is so, that the business has not been forbidden by an act of our General Assembly, or by the Legislatures of many States in the Union.

In the only case to which our attention has been called in which the character of the business received judicial mention, it was said by Chief Justice PARKER of the New York Court of Appeals: "It is not contended that the business of ticket brokers is in itself of a fraudulent character. The business can be honestly conducted; it has been so conducted in the past by honest men engaged in it; and the most that is asserted is that there are some men engaged in the business who have imposed on the public. The same assertion can be made, with equal truth, of every business, trade and profession. The business of selling passage tickets continues, therefore, to be regarded as a lawful and legitimate business."

The lawmaking power of this State has not declared this business unlawful and the judiciary has no authority to do so, yet the effect of these injunctions is to drive these men out of business, and that is the purpose avowed in the arguments of the learned counsel for the railroad companies. It is for the Legislature to declare the public policy of our law, and for the courts to apply the law to particular acts after they are committed, or acts threatening some property right when in existence. It is true these injunctions prohibited the buying and selling of only such tickets as carry on their face certain recitals, but there is nothing to prevent the railroad companies printing those recitals on the face of all tickets, and having all of them signed by a purported purchaser,

and whether the recitals are true or the signature bona fide, are questions on which the broker, according to the terms of these injunctions, when arraigned on a charge of contempt, will have no right to be heard. Any fact so appearing on the face of the ticket is, as to him, *res adjudicata.* The railroad company is clothed with the power of stating the necessary facts on the face of the ticket, and any fact when so stated becomes, by relation to the judgment, *res adjudicata,* and is past disputing.

As between the plaintiffs and the defendants in those suits, if the court had jurisdiction to decree as it has decreed, the decree settles the right of the parties touching the subject adjudged, and the plaintiffs can not, by any subsequent legislation, be deprived of their vested rights in the matters covered by that decree. If the plaintiffs are entitled to what those decrees essay to adjudge to them, then as to the defendants in those suits, no power in the land can deprive them of it. Those decrees cover tickets to be hereafter issued as well as tickets already issued and are aimed chiefly at tickets hereafter to be issued. No one will doubt but that the General Assembly has the power to enact that all railroad tickets issued in this State shall be transferable or assignable, yet if the court had jurisdiction to enter the decrees that it did enter in these cases (and so far as the question of jurisdiction is concerned there is no difference between an interlocutory decree and a final decree; jurisdiction to grant a temporary injunction is jurisdiction to make it perpetual), then if the General Assembly should to-morrow enact a law to the effect that all railroad tickets hereafter issued in this State should be transferable, the act would be invalid in its application to the acts of the parties to those suits relating to tickets covered by those decrees, because if the decrees are valid they confer on those plaintiffs as against those defendants vested rights, and subsequent legislation cannot destroy vested rights. But I apprehend that if any

such condition should arise it would be held that the fault was with the court which had gone beyond its jurisdiction and attempted to reach into the future to adjudicate upon cases before they had arisen. Suppose our General Assembly should conclude that the business of railroad ticket brokers was detrimental to the well-being of the State and pass an act saying that any one who should hereafter buy or sell a railroad ticket that recited on its face that it had been issued by the company at a reduced rate and for that reason was nontransferable, should be deemed guilty of a misdemeanor and upon conviction be punished by fine and imprisonment, would any one say that the General Assembly in passing that act was usurping the powers of government entrusted to the judiciary? Whatever else might be said, in questioning the validity of the act, no one would say that it was not legislative in its character, no one would claim for it that it was a judicial act. Yet that is exactly the kind of act effected by these injunctions. Our attention has been called to a bill now pending in the Municipal Assembly which in its essence copies the very words of these injunctions and proposes to enact them into a law. Are these railroad companies appealing to the World's Fair sentiment in the Municipal Assembly to induce its members to usurp judicial powers, or has the circuit court assumed legislative functions? The act in its nature is either legislative or judicial, it belongs either to the one department of the government or to the other; it can not be exercised by both. In the language of the Supreme Court of Vermont, "No power can properly be a legislative and properly be a judicial power at the same time; and as to mixed powers, the separation of the departments in the manner prescribed by the Constitution precludes the possibility of their existence." [Bates v. Kimball, 2 Chip. l. c. 87.]

No court of last resort has ever before laid down the doctrine that this court now announces in the majority opinion. We have no precedent for it. This I

feel safe in saying, because although we are aided by an unusually strong array of eminent counsel representing nearly all the great railroad interests centering in St. Louis, yet they have referred us to no appellate court that has given its sanction to such a use of judicial power. The very fact that the only legislative body in the State now in session and at all available to the purpose, is resorted to to obtain the same object these injunctions purport to accomplish, evinces a lack of confidence in the position taken by the railroad companies in these cases.

In the brief of the learned counsel for the ticket brokers, is a collection of authorities sustaining every proposition they make and demonstrating that the interlocutory decrees granting these injunctions are legislative and not judicial in their character. I am strongly tempted to quote from some of these authorities, but I have already occupied as much space as ought to be taken in a dissenting opinion.

For the reasons outlined in the foregoing pages I respectfully dissent from the majority opinion. In my judgment, the writs of prohibition ought to issue.

*Gantt*, J., agrees with me in this opinion.