IOWA NATURAL RESOURCES COUNCIL, Appellant,

v.

Allen VAN ZEE, Homer Boyd, and Wilber Van Zee, Appellees.

No. 52931.

Supreme Court of Iowa.

April 9, 1968.

Richard C. Turner, Atty. Gen., Fred Hendrickson, and Larry Seckington, Asst. Attys. Gen., for appellant.

Life, Davis & Life, Oskaloosa, for appellees.

LARSON, Justice.

Subsequent to the enactment of what is now chapter 455A of the Code of 1966, one of the defendants, Allen Van Zee, constructed certain levees and made channel changes on the land owned by defendants. It is alleged that at least portions of these structures were within the flood plain of the North Skunk River. Chapter 455A of the Code requires the approval of the plaintiff, Iowa Natural Resources Council, and a permit from it before such structures are constructed. However, it appears the existing structures were built without a permit and without the approval of plaintiff.

Upon written complaint of a third party, the plaintiff investigated the defendants' structures and construction and then ordered defendants to cease and desist from further construction. They refused to do so, and also refused to make application for a permit. Plaintiff then instituted an action in equity to enjoin the defendants from further construction and also praying for mandatory injunctive relief as to the already-existing structures. After answer and reply, a motion for an adjudication of law points under rule 105, R.C.P., was sustained by the trial court. Four law points were submitted for the trial court's determination. The first of these asked: "In prosecuting this action pursuant to the claimed authority vested in it by the provisions of paragraph 4 of § 455A.33 of the 1966 Code, must the plaintiff establish by evidence more than that the defendants' structures, dams, obstructions, deposits or excavations, if such there be, are in fact within the flood plains as defined by law, and that in fact the defendants have failed to file a verified application as required by law?"

The trial court concluded the issue was merely one of statutory construction and held that paragraph 4 of § 455A.33 is not applicable to structures existing prior to the time the action was brought, because there is no authority to seek abatement of the existing structures by mandatory injunction under that paragraph. It did not pass on the other law points submitted, but concluded, in light of its ruling and determination under law point (1), that adjudication of the remaining law points would be merely academic in nature. The other questions submitted were directed to the constitutionality of the statute and the involved constitutional rights of the defendants. On September 27, 1967, this court granted plaintiff an interlocutory appeal.

Plaintiff contends that the trial court erred in ruling that paragraph 4 of § 455A.-33 did not provide relief for already-existing structures constructed without a permit, and that the statute is constitutional and a proper exercise of governmental authority. Defendants argue that all of chapter 455A is unconstitutional as an invalid exercise of police power.

■ I. It is a cardinal principle of statutory construction that the intent of the legislature is to be gleaned from the statute read as a whole, and not from any section or portion thereof taken piecemeal. City of Vinton v. Engledow, 258 Iowa 861, 140 N. W.2d 857; Rath v. Rath Packing Co., 257 Iowa 1277, 136 N.W.2d 410; City of Nevada v. Slemmons, 244 Iowa 1068, 59 N.W.2d 793, 43 A.L.R.2d 693. The problem presented requires us to examine carefully each of the provisions or paragraphs of § 455A.33 and to determine from a reading of all of them the legislative intent and purpose expressed therein.

Chapter 203, Laws of the Fifty-third General Assembly as amended, now provides in § 455A.33:

"It shall be unlawful to suffer or permit any structure, dam, obstruction, deposit or excavation to be erected, used, or maintained in or on any floodway or flood plains, *which will adversely affect* the efficiency of or unduly restrict the capacity of the floodway, *adversely affect* the control, development, protection, allocation, or utilization of the water resources of the state, or *adversely affect or interfere with* the state comprehensive plan for water resources, or an approved local water resources plan, and the same are *declared to be and to constitute public nuisances,* provided, however, that this provision shall not apply to dams constructed and operated under the authority of chapter 469 as amended.

"The council shall have the *power* to commence, maintain and prosecute any appropriate action to *enjoin or abate a nuisance,* including any of the foregoing nuisances and any other nuisance which adversely affects flood control.

"In the event any person desires to erect or make, or to suffer or permit, a structure, dam, obstruction, deposit or excavation, other than a dam, constructed and operated under the authority of chapter 469 as amended, to be erected, made, used or maintained in or on any floodway or flood plains, such person *shall file a verified written application* with the council, setting forth the material facts, and the council after an investigation or hearing, shall enter an order, determining the fact and permitting or prohibiting the same, upon such terms and conditions as it may prescribe.

"The council shall have the *authority* to maintain an action in equity *to enjoin* any such person from *erecting or making or suffering or permitting to be made* any structure, dam, obstruction, deposit, or excavation other than a dam constructed and operated under the authority of chapter 469, *for which a permit has not been granted.*

"The council *shall have the power to remove or eliminate* any structure, dam, obstruction, deposit or excavation in any floodway which *adversely affects* the efficiency of or unduly restricts the capacity of the floodway, *by* an action in *condemnation,* and in assessing the damages in such proceeding, the appraisers and the court shall take into consideration whether the structure, dam, obstruction, deposit or excavation is lawfully in or on the floodway." (Emphasis added.)

The legislature specifically provided and enumerated in this section the grounds upon which the council could obtain abatement of an existing structure. Specifically, it provided relief by way of condemnation in the case of existing objectionable structures. Nevertheless, plaintiff contends that mandatory injunctive relief is also inferentially available under paragraph 4 by mere-

ly showing that the defendants' structures were within the flood plain and built without applying for and obtaining a permit. The trial court did not agree with this contention, and neither do we.

■ The granting of injunctive relief in most cases is limited to the restraining of actual or threatened acts injurious to the complainant's rights and is not to compel the undoing of an injury. Hanna v. Nowell (Mo.App.), 330 S.W.2d 595; 28 Am.Jur., Injunctions, §§ 3, 17. Such injunctions are commonly called prohibitory injunctions and have the effect of preserving the status quo and operate to restrain the commission or continuance of an act. Schubach v. McDonald, 179 Mo. 163, 78 S.W. 1020, 65 L.R.A. 136, 101 Am.St.Rep. 452, writ of error dismissed in Schubach v. Hough, 196 U.S. 644, 25 S.Ct. 797, 49 L.Ed. 632. Apparently this was the type of injunction visualized in paragraph 4 of this section.

■ However, a court of equity can and in a proper case will award mandatory injunctive relief which will compel some affirmative act, thus going beyond mere restraint. Falcon v. Boyer, 157 Iowa 745, 142 N.W. 427. Although courts look upon the latter with disfavor and such injunctions are granted with caution in cases of great necessity, they may be proper. Black v. Jackson, 177 U.S. 349, 20 S.Ct. 648, 44 L.Ed. 801; Lyle v. City of Chicago, 357 Ill. 41, 191 N.E. 255; 28 Am.Jur., Injunctions, § 20. This type of injunction has reasonable application under paragraph 3 of this section.

■ Injunctive relief by abatement is a harsh and severe remedy and, except in cases of nuisances or other great necessity, it should not be granted unless that authority is clearly and specifically provided by the legislature. Paragraph 4 of the section does not so provide.

■ The legislature here demonstrated it knew how to state this remedy in paragraphs 1 and 2. It is apparent, if it wished, it could have provided for *abatement* as well as *restraint* in paragraph 4. It did not choose to do so. Having not done so, it is reasonable to believe it did not wish to grant that extreme relief for the mere failure to obtain a permit. That being the case, plaintiff's appeal must be to the legislature, not to the courts.

■ It is well established that it is not the province of the courts to pass upon the wisdom, policy, or advisability of a statute. Rath v. Rath Packing Co., supra, 257 Iowa 1277, 1285, 136 N.W.2d 410; Dickinson v. Porter, 240 Iowa 393, 399, 35 N.W.2d 66, and citations; Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 929, 77 N.W.2d 15, 18; Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 529, 530, 111 N.W.2d 317. We conclude that the legislature envisioned the problem presented in the case at bar and selected the remedies it deemed appropriate in each situation. We should not, by judicial fiat, extend that authority, but carefully study each remedial measure to see what recourse was afforded the Natural Resources Council under all adverse circumstances.

II. The remedies the legislature did provide under § 455A.33 appear clear. Paragraph 2 authorizes mandatory injunctive relief for existing structures *if* they can be shown to be a nuisance. Paragraph 1 declares structures to be nuisances *if* they can be shown to "adversely affect the efficiency of or unduly restrict the capacity of the floodway, adversely affect the control, development, protection, allocation, or utilization of the water resources of the state, or adversely affect or interfere with the state comprehensive plan for water resources, * * *." Of course, the burden of proof is placed upon the Iowa Natural Resources Council to show that one of the aforementioned conditions exists before it will be allowed to obtain the injunctive relief authorized. Paragraph 3 of § 455A.33 requires a person who desires to erect or maintain a structure in a flood plain to

file a verified application for a permit, and it does not excuse one from conforming with this requirement by completing such a structure prior to such application. Relief, by implication at least, is by court order to comply. Under paragraph 4 the council may obtain injunctive relief as to construction in progress or future construction by showing that it was within the flood plain and proceeding without a permit. Under paragraph 5 the plaintiff was given the alternative relief of eminent domain to obtain and remove objectionable structures, which may or may not amount to a nuisance. These, we believe, are the optional remedies presently provided the council to aid in this announced public purpose. In Division VI, infra, we shall further consider council recourse when the provisions in paragraph 3 are ignored.

III. In view of the fact that this case will require further proceedings in the district court, we should consider the other law points upon which the trial court did not rule.

Defendants contend chapter 455A of the 1966 Code is unconstitutional and is in violation of Amendment 5 of the United States Constitution and Article I, Section 18, of the Constitution of Iowa, and that it permits a taking of private property without due process of law.

In the second of the law points submitted to the trial court it was asked whether "the authority conferred upon the plaintiff by the state legislature in §§ 455A.2 and 455A.-18 of the 1966 Code constitute a valid exercise of the state's police power."

■ Generally, police power is the exercise of the state's right to regulate the use of property to prevent any use thereof which would be harmful to the public interest. State v. United States Express Co., 164 Iowa 112, 145 N.W. 451; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N.W. 823, 188 N.W. 921; Davis, Brody, Wisniewski v. Barrett, 253 Iowa 1178, 115 N.W.2d 839.

■ It is also well established that whether legislation is a lawful exercise of a state's "police power" depends upon whether the collective benefit therefrom outweighs the specific restraint imposed thereby. Benschoter v. Hakes, 232 Iowa 1354, 8 N.W.2d 481. The means used must be rationally related to the end sought. Pierce v. Incorporated Town of La Porte City, 259 Iowa 1120, 146 N.W.2d 907.

■ In construing a statute we presume it to be constitutional. Every reasonable presumption may be called upon to support it. It will only be declared unconstitutional if there is no reasonable basis to sustain it. Green v. City of Mt. Pleasant, 256 Iowa 1184, 1196, 131 N.W.2d 5; Edge v. Brice, 253 Iowa 710, 716, 113 N.W.2d 755; Iowa Hotel Ass'n. v. State Board of Regents, 253 Iowa 870, 876, 114 N.W.2d 539; Spurbeck v. Statton, 252 Iowa 279, 284, 106 N.W.2d 660; Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1335, 105 N.W.2d 650.

Section 455A.2 is a declaration of policy and provides:

"It is hereby recognized that the protection of life and property from floods, the prevention of damage to lands therefrom and the orderly development, wise use, protection and conservation of the water resources of the state by the considered and proper use thereof, is of paramount importance to the welfare and prosperity of the people of the state, and, to realize these objectives it is hereby declared to be the policy of the state to correlate and vest the powers of the state in a single agency, the Iowa natural resources council, with the duty and authority to establish and enforce an appropriate comprehensive state-wide program for the control, utilization, and protection of the surface and ground-water resources of the state. It is hereby declared that the general welfare of the people of the state of Iowa requires that the water resources of the state be put to beneficial use to the fullest extent of which they are capable, and that the

waste or unreasonable use, or unreasonable methods of use, of water be prevented, and that the conservation of such water be exercised with the view to the reasonable and beneficial use thereof in the interest of the people, and that the public and private funds for the promotion and expansion of the beneficial use of water resources shall be invested to the end that the best interests and welfare of the people are served.

"Water occurring in any basin or in any watercourse, or other natural body of water of the state, is hereby declared to be public waters and public wealth of the people of the state of Iowa and subject to use in accordance with the provisions of this chapter, and the control and development and use of water for all beneficial purposes shall be in the state, which, in the exercise of its police powers, shall take such measures as shall effectuate full utilization and protection of the water resources of the state of Iowa."

Section 455A.18 confers jurisdiction upon and provides for the duties of the council as follows:

"The council shall have jurisdiction over the public and private waters in the state and the lands adjacent thereto necessary for the purposes of carrying out the provisions of this chapter. The council may construct flood control works or any part thereof. In the construction of such works or in making surveys and investigations or in formulating plans and programs relating to the water resources of the state, the council may cooperate with other states or any agency thereof or with the United States or any agency of the United States, or with any person as defined in this chapter.

"Upon application by any person for permission to divert, pump, or otherwise take waters from any watercourse, underground basin or watercourse, drainage ditch or settling basin within the state of Iowa for any purpose other than a non-regulated use, the council shall cause to be

made an investigation of the effect of such use upon the natural flow of such watercourse, the effect of any such use upon the owners of any land which might be affected by such use, and the effect of any such use upon the state comprehensive plan for water resources, and shall hold a hearing thereon. Upon application by any person for approval of the construction or maintenance of any structure, dam, obstruction, deposit or excavation to be erected, used, or maintained in or on the flood plains of any river or stream the council shall cause an investigation to be made of the effect thereof on the efficiency and capacity of the floodway and on the state comprehensive plan for water resources. In determining the effect of any such proposal the council shall consider fully its effect on flooding or flood control both to any proposed works and to adjacent lands and property, on the wise use and protection of water resources, on the quality of water, on fish, wildlife and recreational facilities or uses, and on all other public rights and requirements."

From a close reading of these sections it seems clear the purposes and the means used to accomplish them are rationally related to the welfare and prosperity of the people of this state, and are a valid exercise of police power.

In the absence of a showing by a complaining property owner that the restraint imposed upon him outweighs the collective benefit to the people of the state, it cannot be said there is an illegal taking. Benschoter v. Hakes, supra. These sections of chapter 455A authorize no such restraint.

IV. A vital resource such as water must be subject to regulation by the state under the police power. Justice Holmes stated in a frequently-quoted phrase: "A river is more than an amenity, it is a treasure. It offers a necessity of life that must be rationed among those

who have power over it." State of New Jersey v. State of New York, 283 U.S. 336, 342, 51 S.Ct. 478, 479, 75 L.Ed. 1104. It has been wisely said: "Unquestionably all property in society is held subject to being affected by the powers of the sovereign exercised in the common good. However, it is noteworthy that the governmental power over watercourses is more substantial than that relating to property rights in things other than natural resources. The explanation of this fact lies in the greater public interest in natural resources." Lauer, Water Resources, 131, 223.

On the other hand, a river uncontrolled may at flood state become a devil, a destroyer of life and property, a disrupter of transportation and commerce vital to the state and its citizens. Vartelas v. Water Resources Comm., 146 Conn. 650, 153 A.2d 822. In any event, water and its control are obviously of paramount importance to the welfare of the people.

■ Proper control of rivers and streams, of course, involves the exercise of control of the use of property adjoining these streams or in the recognized floodway or flood plains. Police power properly regulates use of that property because uncontrolled use would be harmful to the public interest. On the other hand, eminent domain provides for the taking of private property because it is useful to the public. See Freund, Police Power, § 511. It may be said that whether the exercise of one or the other of these great powers of government is required depends upon the circumstances of the particular case. See O'Connell, Iowa's New Water Statute—The Constitutionality of Regulating Existing Uses of Water, 47 Iowa L.Rev. 549, and Hines, A Decade of Experience under the Iowa Water Permit System, for a thorough and comprehensive analysis of this subject matter. We are satisfied, as plaintiff maintains, that § 455A.33 is a proper exercise of these great powers of government.

Analogous situations of interference with other property rights in and of themselves predict the validity of this legislation. Numerous times over many years zoning ordinances which substantially limit the use of one's property have been upheld as a valid exercise of police power. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; City of Des Moines v. Manhattan Oil Co., supra, 193 Iowa 1096, 1103, 184 N.W. 823, 188 N.W. 921, 23 A.L.R. 1322; Keller v. City of Council Bluffs, 246 Iowa 202, 207, 66 N.W.2d 113. Zoning ordinances also may regulate the use of riparian property and thereby limit or restrict riparian rights. Beuscher, Appropriation Water Law Elements in Riparian Doctrine States, 10 Buffalo L.Rev. 448, 457. However, such regulations may not extend to the destruction of an urban dweller's property or to deny a riparian owner the right to water, but merely limit its use in the public interest. O'Byrne, Iowa's Water Resources, 206, 209.

"With the changing conditions necessarily attendant upon the growth and density of population and the ceaseless changes taking place in method and manner of carrying on the multiplying lines of human industry, the greater becomes the demand upon that reserve element of sovereignty which we call the police power, for such reasonable supervision and regulation as the state may impose, to insure observance by the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others." City of Des Moines v. Manhattan Oil Co., supra, at page 1103 of 193 Iowa, at page 826 of 184 N.W. See also Steinberg-Baum & Co. v. Countryman, supra, 247 Iowa 923, 931, 77 N.W.2d 15, 19.

■ V. In view of our position taken in the foregoing divisions of this opinion in which we found (1) there was no authority vested in the council to obtain abatement of an existing structure under

paragraph 4, § 455A.33, (2) recourse was directed to removal of designated nuisances or abatement by eminent domain, and (3) an exercise of the powers conferred upon the council to enjoin and abate were not invalid or unconstitutional, we need give no further consideration to the question raised by the third law point. We find no invasion of private property rights within the contemplation of the state or federal constitutions in the requirement that a person who desires to erect or make or suffer or permit a structure, dam, obstruction, deposit, or excavation to be used or maintained in or on any floodway or flood plain, must file a verified written application with the plaintiff setting forth the material facts relative thereto. Obviously, this preliminary requirement is necessary for a knowledgeable council determination of whether the proposed structures or property alterations create a use adverse to the public interest.

VI. Under the provisions of the third paragraph of § 455A.33 plaintiff claims defendant was required to file a verified application for a permit before erecting the structures in question, and that he did not do so. On the contrary, defendant claims the requirement in said paragraph that an applicant for a permit file engineering plans certified by a registered land surveyor or engineering company, together with a verified written application, constituted an invasion of his private property rights within the contemplation of the federal or state constitutions. We do not agree.

[15] The council contends defendant should be required to file the application for a permit even though the structure has been completed so that the orderly procedure set out in chapter 455A can be effectively followed. We agree. Until it appears from a proper application relating the facts and planned alterations on one's land, the question as to its compliance with the state comprehensive plan for water resources cannot be resolved to the end that the best

interest and welfare of the people be served. In flood control projects only elevations and slope determined by a competent engineer are of real value in assessing the effects of structures on the flow in rivers, flood plains, and floodways. Reasonable requirements of an application are a part of the use restriction placed on the lands in the public interest. The reasonableness of the restrictions as disclosed by such an application and certified plans conceivably might determine whether there is a proper exercise of police power. On the other hand, it might appear there is a taking which is compensable under eminent domain. In the latter case it appears defendants' remedy is by mandamus. See Harrison-Pottawattamie Drainage Dist. No. 1 v. State of Iowa et al., Iowa, 156 N.W.2d 835, filed March 5, 1968. In the absence of any factual issue as to its reasonableness, we find no violation of defendants' constitutional rights in the requirement that they file certified plans with their verified application.

We are satisfied there is nothing to indicate that the authority vested in the council under chapter 455A, and specifically §§ 455A.2, 455A.18, and 455A.33, amounts to an invalid exercise of police power. We believe that § 455A.33 applies to any and all structures erected subsequent to the effective date of this Act; that in order for the Iowa Natural Resources Council to be able to pass upon the effect of such a structure, or to sustain its burden to prove already-erected structures are in fact illegal under the provisions of the second paragraph of this section, the council is authorized to obtain injunctive relief compelling defendant to file a verified application for a permit to erect or maintain a structure described in the Act, and that this matter should be remanded for an appropriate order granting such relief.

The trial court is therefore directed to issue a writ of injunction enjoining and requiring the defendants to comply with § 455A.33 by filing a proper application for

a permit to erect the structures involved herein, within 60 days from the date of that writ, or within such additional time as the district court may allow, and for such other and further proceedings as may be necessary to comply with the provisions of this opinion.

Modified and remanded.

All Justices concur, except RAWLINGS, J., and GARFIELD, C. J., who dissent.

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning expressed in Divisions I and II of the majority opinion, and result reached, I respectfully dissent.

I. The question presented is whether chapter 455A, Code, 1966, permits the natural resources council to compel compliance with the provisions of that Act by injunctive procedure, more specifically by mandatory injunction as to those structures, dams, obstructions, deposits or excavations, hereafter sometimes referred to as structures, which have been constructed or on which construction has been commenced within any floodway or flood plain in the state subsequent to effective date of the Act. In my humble opinion the council does have such power and authority.

At the outset section 455A.2, Code, 1966, provides: "It is hereby recognized that the protection of life and property from floods, the prevention of damage to lands therefrom and the orderly development, wise use, protection and conservation of the water resources of the state by the considered and proper use thereof, is of paramount importance to the welfare and prosperity of the people of the state, and, to realize these objectives it is hereby declared to be the policy of the state to correlate and vest the powers of the state in a single agency, the Iowa natural resources council, with the duty and authority to establish and enforce an appropriate comprehensive state-wide program for the control, utilization, and protection of the surface and ground-water resources of the state. It is hereby declared that the general welfare of the people of the state of Iowa requires that the water resources of the state be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use, or unreasonable methods of use, of water be prevented, and that the conservation of such water be exercised with the view to the reasonable and beneficial use thereof in the interest of the people, and that the public and private funds for the promotion and expansion of the beneficial use of water resources shall be invested to the end that the best interests and welfare of the people are served.

"Water occurring in any basin or in any watercourse, or other natural body of water of the state, is hereby declared to be public waters and public wealth of the people of the state of Iowa and subject to use in accordance with the provisions of this chapter, and the control and development and use of water for all beneficial purposes shall be in the state, which, in the exercise of its police powers, shall take such measures as shall effectuate full utilization and protection of the water resources of the state of Iowa."

With regard to the foregoing it is a well established principle of law that where there is a question as to applicability of a statute to particular circumstances, the purpose of the statutory enactment may be examined in order to determine its proper application. State v. Bishop, 257 Iowa 336, 340, 132 N.W.2d 455; Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 1322–1323, 121 N.W.2d 361; Fleming v. Hawkeye Pearl Button Co. (8 Cir.), 113 F.2d 52, 56; 82 C.J.S. Statutes § 349, page 730; and 50 Am.Jur., Statutes, section 309, page 297.

And the declared purpose of chapter 455A is to correlate and vest *the powers of the state in the council, with authority to enforce an appropriate state-wide program* for control of surface and ground waters for benefit and protection of the public.

II. Closely related to purpose of legislation is the mischief sought to be remedied by its enactment, which may also be examined in order to determine the proper construction. Appleby v. Farmers State Bank of Dows, 244 Iowa 288, 295–297, 56 N.W.2d 917, and Tallios v. Tallios, 350 Ill. App. 299, 112 N.E.2d 723, 725.

Clearly the mischief here sought to be remedied is the creation by landowners, without a permit by the council, of structures within established floodways or flood plains for protection of the public. The only effective remedy for this mischief is a mandatory injunction to compel removal of offending unlawful structures.

In addition, if reasonably possible, effect should be given to every part of a legislative enactment and related acts. Stated otherwise, in seeking the meaning of a law the entire act and other related acts and statutes should be considered. Ritter v. Dagel, Iowa, 156 N.W.2d 318, opinion filed February 6, 1968; State v. Charlson, Iowa, 154 N.W.2d 829, 831; Rath v. Rath Packing Co., 257 Iowa 1277, 1288–1289, 136 N.W.2d 410; and Manilla Community Sch. Dist. of Crawford and Shelby Counties v. Halverson, 251 Iowa 496, 501, 101 N.W.2d 705.

And if an act is susceptible to more than one interpretation or application, courts must give to it that interpretation or application which is logical, rather than one that is illogical or which will produce illogical results. Severson v. Sueppel, Iowa, 152 N.W.2d 281, 284; Brandon v. Roy, 259 Iowa 1271, 147 N.W.2d 810, 813; and Hardwick v. Bublitz, 253 Iowa 49, 53, 111 N.W.2d 309.

To hold as does the majority is to me an illogical interpretation of the Act for it denies the council its one effective tool by which to effectuate and carry out the self-evident intent and purpose of the Act, placing an insurmountable obstacle in the path of the council in its efforts to remedy the mischief sought by the Act itself to be prevented.

III. It is my understanding plaintiff contends relief by mandatory injunction is available, by implication if not expressly, to compel removal of offending structures upon a showing they were established or created within a floodway or flood plain after the effective date of chapter 455A, where the person responsible failed to secure the prerequisite permit. That contention is to me reasonably proper and correct.

The first paragraph of section 455A.33, provides in part: *"It shall be unlawful* to suffer or permit any structure, dam, obstruction, deposit or excavation to be erected, used, or maintained in or on any floodway or flood plains which will adversely affect the efficiency of or unduly restrict the capacity of the floodway, adversely affect the control, development, protection, allocation, or utilization of the water resources of the state, or adversely affect or interfere with the state comprehensive plan for water resources, or an approved local water resources plan, *and the same are declared to be and to constitute public nuisances*, provided, however, that this provision shall not apply to dams constructed and operated under the authority of chapter 469 as amended."* (Emphasis supplied.)

And section 455A.39 makes any violation of the Act an offense punishable by fine or imprisonment.

From the foregoing one conclusion is inescapable. The general assembly, in the exercise of its police powers, made it punishably unlawful, after effective date of the Act, to cause or permit construction of designated structures in or upon any floodway or flood plain of this state, at the same time making any such structures a *public nuisance*. See section 657.2(1), (3), (4), Code, 1966; Sparks v. City of Pella, Marion County, 258 Iowa 187, 190, 137 N.W.2d 909; Gates v. City Council of Bloomfield, 243 Iowa 671, 675, 53 N.W.2d 279; State v. Smith, 82 Iowa 423, 425, 48 N.W. 727; 66 C.J.S. Nuisances §§ 2–3, pages 730–734; and 39 Am.Jur., Nuisances, section 8, page

285. And as to exercise of police power see generally Benschoter v. Hakes, 232 Iowa 1354, 1361–1364, 8 N.W.2d 481, and City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1103–1104, 184 N.W. 823, 188 N.W. 921.

Furthermore, a court of equity has jurisdiction to enjoin a public nuisance, the creation or maintenance of which is also a punishable offense. Rule 320, R.C.P.; Harvey v. Prall, 250 Iowa 1111, 1116, 97 N.W.2d 306; 12 Drake L.Rev. 107; and Annos. 75 A.L.R. 1298.

As stated by Beuchert, 4 Natural Resources Journal, 486, 497–498: "The general rule is that the legislature may classify as a nuisance anything which is detrimental to the health, morals, peace, or welfare of the citizens of the state. It may also enlarge the category of nuisances by classifying as nuisances acts or things which were not so at common law. However, the legislature cannot classify as a nuisance something which is not so in fact. But this does not mean that the act or thing must actually be a nuisance at the time it is so classified by the legislature. Whenever a thing is of such a nature that it may become a nuisance, it may be regulated or prohibited. And where there is a substantial difference of opinion as to whether or not there is a real danger of a future nuisance, great deference will be given to the legislature."

He concludes, loc. cit., 4 Natural Resources Journal 500: "Therefore, it would seem quite likely that legislation declaring that an obstruction of the floodway is a public nuisance would be upheld. * * * the constriction of the floodway may well affect the entire community since * * * ponding is generally not limited to a narrow area. And the entire community will have to bear the cost of any flood relief program, the burden of which is increased in proportion to the increased damage caused by floodway encroachment. Moreover, the remedy in a suit for damages or for an injunction to abate a private nuisance may often be unavailable due to the difficulty of proving any particular damage or causal relationship between any one obstruction and particular realty."

IV. The foregoing views find support in the second paragraph of section 455A.33, which states: "*The council shall have the power to commence, maintain and prosecute any appropriate action to enjoin or abate a nuisance, including any of the foregoing nuisances and any other nuisance which adversely affects flood control.*" (Emphasis supplied.)

The words "including any of the foregoing nuisances" clearly refer to the first paragraph, quoted supra, which relates exclusively to post-statutory structures, with respect to which the council has power to commence an action "to enjoin *or* abate". This is demonstrated by the fact the same paragraph permits abatement of pre-statutory structures provided the council can establish they constitute a nuisance.

V. In the same vein the third paragraph provides, inter alia: "In the event any person desires to erect or make, or to suffer or permit, a structure, dam, obstruction, deposit or excavation, * * * to be erected, made, used or maintained in or on any floodway or flood plain, such person *shall* file a verified written application with the council, setting forth the material facts, and the council after an investigation or hearing, shall enter an order, determining the fact and permitting or prohibiting the same, upon such terms and conditions as it may prescribe." (Emphasis supplied.)

This mandatory provision can only apply to post-statutory structures alone.

VI. Then the fourth paragraph of section 455A.33 provides: "*The council shall have the authority to maintain an action in equity to enjoin any such person from erecting or making or suffering or permitting to be made any structure,* dam, obstruction, deposit, or excavation other than a dam constructed and operated under the authority of chapter 469, *for which a permit has not been granted.*" (Emphasis supplied.)

Here again reference can only be to structures created or commenced after effective date of the Act.

It is to me evident the foregoing clearly discloses the council's remedy with respect to a post-statutory structure, is "the authority to maintain an action in equity to enjoin it as a public nuisance".

VII. Finally, the fifth paragraph of this statute provides: "The council shall have the power to remove or eliminate any structure, dam, obstruction, deposit or excavation in any floodway which adversely affects the efficiency of or unduly restricts the capacity of the floodway, by an action in condemnation, and in assessing the damages in such proceeding, the appraisers and the court shall take into consideration whether the structure, dam, obstruction, deposit or excavation is lawfully in or on the floodway."

I submit this paragraph of section 455A.-33 has no application to post-statutory structures, but applies strictly and exclusively to pre-statutory structures alone.

Stated otherwise, under the language of paragraph five, a pre-statutory structure which is not a nuisance under the Act is a "lawful" structure or a structure "lawfully in or on the floodway." Its lawful character must be considered in assessing damages upon council removal or abatement by action in condemnation. However, a pre-statutory structure, which is a nuisance under the Act, is neither a "lawful" structure nor a structure "lawfully in or on the floodway." While the council must still proceed by way of condemnation as to unlawful pre-statutory structures, the fact it is not one "lawfully in or on the floodway" may be considered in determining the measure of damages. In other words, "unlawful" as used in paragraph one applying strictly to post-statutory structures, and "lawfully" as employed in the fifth paragraph applicable exclusively to pre-statutory structures, have separable meanings attributable to the post-statutory or pre-

statutory character of the structure in question.

VIII. It is to me evident section 455A.-33, by implication if not expressly, creates a certain reasonable scheme of classification. On one hand, structures, dams, obstructions or excavations in existence prior to effective date of the Act are not necessarily unlawful. Such structures may or may not constitute a public nuisance. On the other hand, structures, dams, obstructions or excavations created without the required permit, after effective date of the Act, are per se unlawful. With regard to such post-statutory structures, they are statutorily made a public nuisance.

In Vartelas v. Water Resources Commission, 146 Conn. 650, 153 A.2d 822, 824, a case involving construction of legislation similar in language and having a purpose identical with that of the Act here under consideration, the court said: "In authorizing the exercise of the police power with respect to situations where there are no existing structures or encroachments within the lines established or to be established, as in the instant case, and the exercise of the power of eminent domain where there are structures or encroachments in existence within the lines established or to be established, the statute creates a classification within the power of the legislature to make. Between the two situations there is a natural and substantial difference germane to the subject and purposes of the legislation. State v. Gordon, 143 Conn. 698, 706, 125 A.2d 477; Franklin Furniture Co. v. City of Bridgeport, 142 Conn. 510, 514, 115 A.2d 435; Murphy, Inc. v. Town of Westport, 131 Conn. 292, 304, 40 A.2d 177, 156 A.L.R. 568; Second National Bank of New Haven v. Loftus, 121 Conn. 454, 460, 185 A. 423; see Chouinard v. Zoning Commission, 139 Conn. 728, 732, 97 A.2d 562."

I would hold a similar distinction is created by the provisions of section 455A.33, the material portions of which are quoted supra.

IX. As to remedy by injunction relative to post-statutory structures, compulsion of some positive nature as to existing conditions is necessary. Stated otherwise some affirmative act or acts are essential in order to effect the required results—protection of the public.

Early restrictions on the form of injunction have given way to a more liberal construction of the court's power. It is now well settled that unless prohibited from so doing by some constitutional or statutory provision, a court of equity can, and in proper cases will award mandatory, including preliminary mandatory, relief as well as prohibitive injunctive relief.

In other words the court may by its mandate compel the undoing of those acts which have been illegally done. See 28 Am.Jur., Injunctions, section 17, page 506.

The factual circumstances disclosed by the pleadings here make clear the necessity of construing the word "enjoin" in the fourth paragraph of section 455A.33, to include the compelling of some active measures to restore the status quo, to provide preventive relief.

To hold otherwise would emasculate and make operatively meaningless not only the first four paragraphs of section 455A.33, but important provisions of the entire chapter as well.

X. It appears that although plaintiff acted illegally in erecting a post-statutory structure in a floodway or flood plain, the majority now proposes to legalize such conduct by requiring the formality of filing an after-the-act "proper application". Stated otherwise, the position taken by the majority serves, in effect, to make lawful by an after-the-fact application that which is by statute expressly made unlawful.

Pursuing this theory to a logical conclusion, if plaintiff now files an application and the council refuses him a permit, he may appeal to the district court. But, even though the court, on appeal, agrees with such decision of the council, the of-fending structure remains. Here another problem is presented. The majority says, at least inferentially, mandatory injunctive relief is not even then available to compel removal of the unlawful structure, the remedy being confined to proceedings in eminent domain.

In fact the majority says, among other things: "The legislature specifically provided and enumerated in this section the grounds upon which the council could obtain abatement of an existing structure. Specifically, it provided relief by way of condemnation in the case of existing objectionable structures. Nevertheless, plaintiff contends that mandatory injunctive relief is also inferentially available under paragraph 4 by merely showing that the defendants' structures were within the flood plain and built without applying for and obtaining a permit. The trial court did not agree with this contention, and neither do we." With this statement I cannot agree.

The issue before us is whether the Natural Resources Council has lawful authority to compel removal by mandatory injunction of a post-statutory structure placed in a floodway or flood plain where the statutorily required application for permission to so place such structure has not been filed, as a consequence of which no permit has ever issued.

I am satisfied the council not only has that authority but when it shows to a court having requisite jurisdiction a party has placed a post-statutory structure in a floodway or flood plain without having first filed the application required by law, and of necessity without benefit of permit, a mandatory injunction not only can but should issue.

XI. It is to me evident the majority opinion opens the door to a race between landowners and the council. If an individual, without obtaining the required permit, is successful in creating that which is punishably unlawful by the provisions of the first paragraph of section 455A.33, and

section 455A.39, before the Natural Resources Council becomes aware of what has been or is being done, the council is relatively powerless to remedy the situation.

Well settled principles of statutory construction do not permit such a self-defeating result.

I would reverse.

GARFIELD, C. J., joins in this dissent.