EASTER LAKE ESTATES,
INC., Appellant,

v.

IOWA NATURAL RESOURCES
COUNCIL, Appellee.

No. 67371.

Supreme Court of Iowa.

Dec. 22, 1982.

George E. Flagg of Flagg, Hockett, Benhart & Golden, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth M. Osenbaugh and Eliza Ovrom, Asst. Attys. Gen. and Michael P. Valde, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

This appeal involves an order of the Iowa Natural Resources Council (council) requiring the removal of mobile homes from a floodplain within five years, under chapter 455A of the Iowa Code (1979). (Chapter 455A was replaced by chapter 1199 of the 1982 Iowa Acts, effective for the most part July 1, 1983.)

The council found the facts substantially as follows. Yeader Creek flows generally easterly in Polk County, Iowa, and, with its tributaries, drains about 6500 acres. In the 1960's the Polk County Conservation Commission proposed the construction of an earthen dam on the creek to create Lake Easter with permanent water storage of

5300 acre-feet. The dam would be 39 feet high and 1850 feet long. It and the lake would lie just south of Des Moines. From that point the creek proceeds generally northward into Des Moines, passing under a railroad bridge. The area was very sparsely populated at the time. We attach a rough sketch.

The conservation commission applied to the council for permission to create the lake for public recreation. The council studied the proposal in 1965 and 1966 and eventually entered three orders granting permission. The conservation commission completed construction in 1967. The dam was classified as "low hazard" in view of the sparse population. Since that time the dam has been well maintained.

In 1972 the City of Des Moines proposed construction of three large sewage lagoons just downstream (north) of the railroad. The council also reviewed this proposal. After the city and the railroad agreed that the city would clean out and maintain the railroad bridge-opening to improve the water flow, the council issued a permit for the lagoons. The city then built them.

Also in 1972, Ronald L. Woods purchased land between the dam and the railroad, just inside the Des Moines city limits. He communicated with the council about his constructing a mobile home court on his land.

Although requested, he never submitted the necessary detailed plans for the project and never obtained a permit to construct it. Notwithstanding, he built the court in 1976 and 1977 as Easter Lake Estates, Inc. (mobile home court), and thereafter rented out spaces for mobile homes.

Following several catastrophes in the nation resulting from dam failures, Congress enacted the National Dam Safety Act of 1972, 33 U.S.C. §§ 467 et seq. (1976), which in general requires the United States Army Corps of Engineers to examine and report on dams. The Corps classifies them according to potential downstream hazard to life and property in the event of dam failure.

The Corps examined Lake Easter dam under the act and in 1979 changed the classification from low hazard to "non-emergency high hazard," on account of the mobile homes and their occupants below the dam. The Corps found that if the dam should overtop in a flood, the water would first flow into a small tributary of Yeader

Creek and then proceed into the mobile home court from the north, hindering and possibly preventing evacuation. The flow would increase as the earthen dam eroded to the point of a washout. The presence of the rail road and the sewage lagoons would tend to restrict the flow downstream. The Corps estimated the flood at four to five feet deep in the mobile home court; a council engineer estimated it at nine feet. Loss of life and large property damage would result from such a flood. The Corps employed the "probable maximum flood" standard, which is virtually the universal standard used for high hazard dams, and recommended removal of the mobile homes as the most direct solution. Pending completion of such a solution, the Corps recommended several interim safety measures.

The council commenced contested case proceedings under the Iowa Administrative Procedure Act against the mobile home court and, after hearing, found that the court, situated as it is, constitutes a nuisance. The council considered but rejected various solutions as unfeasible, and finally ordered that the mobile homes be removed within five years. For interim protection, the council ordered a warning system for the residents, and other measures.

The mobile home court appealed to district court, which affirmed. It then appealed to this court. In passing on the appeal, we are confined to the grounds enumerated in section 17A.19(8) of the Iowa Administrative Procedure Act.

I. The first ground for reversal advanced by the mobile home court actually involves three arguments.

A. The first argument is that after the mobile home court had been constructed a year, the council could not remove it. This takes us into the pertinent paragraphs of section 455A.33 of the Iowa Code of 1979:

1. *Unlawful structures.* It shall be unlawful to suffer or permit any structure . . . to be erected . . . or maintained in or on any floodway or flood plains, which will adversely affect the efficiency of or unduly restrict the capacity of the floodway, adversely affect the control, development, protection, allocation, or utilization of the water resources of this state . . . and the same are declared to be and to constitute public nuisances. . . .

2. *Actions.* The council shall have the power to commence, maintain and prosecute any appropriate action to enjoin or abate a nuisance, including any of the foregoing nuisances and any other nuisance which adversely affects flood control.

3. *Application for permit.* In the event any person desires to erect or make, or to suffer or permit, a structure . . . to be erected, made, used or maintained in or on any floodway or flood plains, such person shall file a verified written application with the director, setting forth the material facts. . . . The director, or the council, after an investigation or a public hearing if there is an objection to the proposed project shall determine the fact and approve or deny the application imposing such conditions and terms as the director or council may prescribe. A determination of the director may be appealed to the council by an aggrieved party.

4. *Injunction.* The council shall have the authority to maintain an action in equity to enjoin any such person from erecting or making or suffering or permitting to be made any structure . . . for which a permit has not been granted. The council is also authorized to abate as a public nuisance any structure . . . erected or made without a permit required by this chapter within one year of cessation of construction. The costs of the abatement shall be borne by the violator.

5. *Removal.* The council shall have the power to remove or eliminate any structure . . . in any floodway which adversely affects the efficiency of or unduly restricts the capacity of the floodway, by an action in condemnation, and in assessing the damages in such proceeding, the appraisers and the court shall take into consideration whether the structure . . . is lawfully in or on the floodway.

. . . .

These paragraphs in somewhat different form came before this court in *Iowa Natural Resources Council v. Van Zee*, 261 Iowa 1287, 158 N.W.2d 111 (1968). The court stated:

> The remedies the legislature did provide under § 455A.33 appear clear. Paragraph 2 authorizes mandatory injunctive relief for existing structures *if* they can be shown to be a nuisance. Paragraph 1 declares structures to be nuisances *if* they can be shown to 'adversely affect the efficiency of or unduly restrict the capacity of the floodway, adversely affect the control, development, protection, allocation, or utilization of the water resources of the state, or adversely affect or interfere with the state comprehensive plan for water resources. * * *' Of course, the burden of proof is placed upon the Iowa Natural Resources Council to show that one of the aforementioned conditions exists before it will be allowed to obtain the injunctive relief authorized. Paragraph 3 of § 455A.33 requires a person who desires to erect or maintain a structure in a flood plain to file a verified application for a permit, and it does not excuse one from conforming with this requirement by completing such a structure prior to such application. Relief, by implication at least, is by court order to comply. Under paragraph 4 the council may obtain injunctive relief as to construction in progress or future construction by showing that it was within the flood plain and proceeding without a permit. Under paragraph 5 the plaintiff was given the alternative relief of eminent domain to obtain and remove objectionable structures, which may or may not amount to a nuisance. These, we believe, are the optional remedies presently provided the council to aid in this announced public purpose.

*Id.* at 1293–94, 158 N.W.2d at 115–16. *See also Op. Iowa Atty. Gen.* 32, 34 (1970).

■ The council found that the mobile home court constitutes a nuisance. It therefore had express authority under paragraphs 1 and 2 of section 455A.33 to order abatement.

The mobile home court argues, however, that at the time of *Van Zee* paragraph 4 of section 455A.33 did not contain the words, "within a year after cessation of construction," and that the General Assembly added those words later. It further contends that the mobile home court was constructed more than a year before the council commenced this proceeding. It concludes that the proceeding cannot be maintained.

The mobile home court is right that the quoted words were added after *Van Zee* and that the council did not commence this proceeding until more than a year after construction of the mobile home court. The problem is with the mobile home court's conclusion. *Van Zee* distinguishes proceedings for *nuisance* under paragraph 1 and 2 from proceedings for failure to obtain a *permit* under paragraphs 3 and 4. While the failure of the mobile home court to obtain a permit is relevant here, the gravamen of this proceeding is nuisance. The one-year limitation applies under paragraphs 3 and 4, but this proceeding is bottomed on 1 and 2 which have no such limitation.

The mobile home court's one-year limitation argument does not have merit.

B. The mobile home court's second argument is that the area of the court is zoned residential by the City of Des Moines; therefore a permit from the council is not necessary by virtue of the second paragraph of section 455A.35 of the Code. We pass by the point that this proceeding is founded on nuisance rather than absence of a permit. The first paragraph of that section authorizes the council to determine the characteristics of floods which may reasonably be expected to occur and to establish "encroachment limits." The second paragraph provides:

> The council may co-operate with and assist local units of government in the establishment of encroachment limits, flood plain regulations and zoning ordinances relating to flood plain areas within their jurisdiction. Encroachment limits, flood plain regulations, or flood plain

zoning ordinances proposed by local units of government shall be submitted to the council for review and approval prior to adoption by such local units of government. Changes or variations from an approved regulation or ordinance as it relates to flood plain use shall be approved by the council prior to adoption. Individual applications, plans and specifications and individual council approval orders shall not be required for works on the flood plains constructed in conformity with encroachment limits, flood plain regulations, or zoning ordinances adopted by the local units of government and approved by the council.

The record is barren of a showing of compliance with this paragraph by the City of Des Moines in connection with the mobile home area. We do not find merit in this argument.

■ C. The mobile home court's third argument is predicated on due process of law and is three-pronged. Under the first prong the mobile home court argues that abatement of the nuisance would deprive it of property without due process of law. This argument cannot be accepted in view of our holdings with respect to police power on similar constitutional objections in *Van Zee,* at 1294–97, 158 N.W.2d at 116–17, and in *Woodbury County Soil Conservation District v. Ortner,* 279 N.W.2d 276, 278 (Iowa 1979). This is quite apart from Woods' constructing the mobile home court when he knew he did not have a permit. *See Young Plumbing & Heating Co. v. Iowa Natural Resources Council,* 276 N.W.2d 377, 385, n. 5 (Iowa 1979).

Under the second prong the mobile home court claims that it should be able to argue the deprivation of property sustained by the mobile home occupants. Even if the mobile home court were allowed to press its tenants' claims, the record does not disclose that any of the tenants had leases extending beyond five years from the date of the council's order. In any event, the tenants' rights could not rise higher than those of their lessor, the mobile home court.

■ Under the third prong, the mobile home court contends that it did not receive constitutional notice of the council hearing in this case. The difficulty with this contention is that the mobile home court did not raise it at the administrative level—or at the district court level either—and it cannot first raise the issue now. *Green v. Iowa Department of Job Service,* 299 N.W.2d 651, 655 (Iowa 1980).

In addition, if the mobile home court desired to be heard further it could have applied for rehearing at the administrative level. Iowa Code § 17A.16(2). It did not do so. It could also have applied, at the district court level, for permission to introduce additional evidence before the council. § 17A.19(7). It did not make such an application.

Woods appeared and participated in the hearing before the council, with his counsel and witnesses. He was also aware of the parties' prior communications and the Corps' report.

We find no due process deprivation.

II. The mobile home court's second ground for reversal is that under the record as a whole, the council's decision does not have substantial evidentiary support and is characterized by abuse of discretion. In this proceeding these two arguments are interrelated factual claims. See Iowa Code § 17A.19(8)(*f*), (*g*).

■ We have examined the record. Basically the mobile home court contends that the council's fact findings are erroneous and that the dam will not be overtopped and the court will not be flooded. The council's findings to the contrary are founded on strong and substantial evidence. The council could reasonably find as it did that a real danger exists the dam will break from precipitation which is reasonably possible, and that a large body of water will speedily descend on the mobile home court. The

presence of substantial evidentiary support ends the argument insofar as section 17A.19(8)(*f*) is concerned. The mobile home court argues the case in its brief as though this court were a jury deciding the facts anew. That is not the case. Our role in the factual area is circumscribed. *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978).

As to section 17A.19(8)(*g*), far from abusing its discretion the council decided the proceeding in a manner which was not only indicated but perhaps dictated by the facts. When the dam was built the applicable low hazard standard was based on ability safely to pass 7.55 inches of rain in six hours. It was actually built to pass a 10-inch rain in six hours. The applicable high hazard standard following construction of the court requires ability to pass 25.5 inches of rain in six hours. The dam cannot safely pass a flood of even half that amount. Under the evidence, the inhabitants and the mobile homes below the dam are in danger from a flood which is reasonably possible—and that is the applicable engineering standard with high hazard dams. The council could reasonably conclude that Woods is flirting with disaster.

Section 455A.33 makes a statutory nuisance of any structure in a floodway which will "adversely affect the efficiency of or unduly restrict the capacity of the floodway," or "adversely affect the control, development, protection, allocation, or utilization of the water resources of this state. . . ." At the time Woods bought the site and erected the mobile home court, the dam and lake were in existence. The dam was functioning properly, handling the water, and of approved engineering standards of design and construction for safety purposes. This was the state of the waterway when Woods bought and built. But his installation of an inhabited mobile home court changed matters drastically. The preexisting dam and lake were no longer of acceptable engineering standards of design

and construction. The dam and lake had to be eliminated or they had to be changed substantially—which would back water onto upstream properties—or the mobile home court had to go. By building the mobile home court Woods thus adversely affected the efficiency of the floodway as it preexisted and he necessarily restricted its capacity. The reasonable possibility of torrential rains in short periods meant that water could overtop the existing dam and wash it out. Prior to construction of the court, loss of life and substantial property damage would not occur. But after the court was built this condition could no longer be tolerated due to the inhabited mobile homes.

Woods also adversely affected the utilization of the water resources of this state. If the mobile home court remained, the preexisting recreational dam and lake had to go.

We need not decide whether, if the mobile home court had been there first under a permit, the council could have lawfully permitted a dam and lake to be built. That is the reverse of the actual scenario. Under the facts which the council found on substantial evidence, the council was warranted in holding that the mobile home court constituted a nuisance.

We do not find merit in the mobile home court's arguments relative to sufficiency of evidence and abuse of discretion.

III. The mobile home court's final ground for reversal is that the council did not have jurisdiction of the proceeding because the area of the court is not in a floodplain as defined in section 455A.1 of the Code: "'*Flood plains*' means the area adjoining the river or stream, which has been or may be hereafter covered by flood water. . . ."

█ The area of the mobile home court adjoins a stream—Yeader Creek. Substantial evidence appears in the record from which the council could reasonably find as it did that the court area "has been" and "may be hereafter" covered by flood water.

We reject the mobile home court's last ground, and uphold the district court's judgment affirming the council's order.

AFFIRMED.