EASTER LAKE ESTATES,
INC., Appellee,

v.

POLK COUNTY, Iowa, and State of
Iowa, Appellants.

No. 87–1785.

Supreme Court of Iowa.

July 19, 1989.

As Corrected July 20, 1989.

James A. Smith, County Atty., and Norman G. Jesse and Linda Newman Gentry, Asst. County Attys., for appellant Polk County.

Thomas J. Miller, Atty. Gen., John R. Perkins and Elizabeth M. Osenbaugh, Asst. Deputy Attys. Gen. and Michael H. Smith, Asst. Atty. Gen., for appellant State of Iowa.

Virgil Moore of Virgil Moore, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This interlocutory appeal stems from a mandamus action brought by plaintiff Easter Lake Estates, Inc. (Easter Lake) to compel the defendants State of Iowa and Polk County to institute condemnation proceedings. The property sought to be condemned, Easter Lake Estates, is a 65–unit mobile home park located on the floodplain beneath Easter Lake Dam. The park was previously found by the Iowa Natural Resources Council (INRC) to be a nuisance subject to abatement in accordance with Iowa Code section 455A.33 (1979). We affirmed that decision in an earlier chapter of this litigation, *Easter Lake Estates, Inc. v. Iowa Natural Resources Council*, 328 N.W.2d 906, 911 (Iowa 1982) (hereinafter *"Easter Lake I"*).

In reliance on principles of res judicata, Polk County moved for adjudication of law points, and the State moved for summary judgment. The trial court first sustained, then rescinded, judgment in these defendants' favor. We now reverse.

I. *Background.* Following our decision in *Easter Lake I*, plaintiff commenced this action. The suit was originally pled in two divisions. The first count alleged negligence against the City of Des Moines, an appraiser, Polk County, and the State of Iowa for not *stopping* Easter Lake from building on its floodplain property. In the second count plaintiff alleged that the State and county enforcement of the abatement order upheld in *Easter Lake I* constituted a taking of property without just compensation, in violation of the Iowa and United States Constitutions. Thus plaintiff sought a writ of mandamus to compel Polk County and the State of Iowa to commence condemnation proceedings.

After a mistrial on the negligence claims, Easter Lake dismissed that count of its petition. Trial was then scheduled on the "taking" claim. Polk County moved for an adjudication of law points, *see* Iowa R.Civ.P. 105, arguing that principles of res judicata preclude Easter Lake from relitigating identical claims and issues decided adversely to it in *Easter Lake I*. Alternatively, Polk County urged the court to find, as a matter of law, that a government cannot be compelled to condemn a public nuisance. On essentially the same grounds, the State moved for summary judgment.

In a lengthy and detailed ruling dated April 1, 1987, the district court found that Easter Lake could not prevail against either defendant on its mandamus action because all the factual issues germane to Easter Lake's takings claim had been concluded adversely to it in the judicial review proceedings that culminated in *Easter Lake I*. Specifically, the court found that plaintiff was attempting to relitigate whether the mobile home park was built on a floodplain, whether a permit was needed, and whether the abatement order amounted to an unconstitutional taking of property. All three issues, the trial court held, had been raised and resolved in the prior action, and further litigation on the takings issue was barred by the doctrine of issue preclusion. There being no other claims or issues to decide, the court entered judgment for the defendants.

Easter Lake then moved to enlarge and amend the court's findings pursuant to

Iowa Rule of Civil Procedure 179(b). Nearly eight months passed before the trial court ruled on the motion. The ruling, dated November 23, 1987, inexplicably rescinded the prior order *in toto* and purported to enter judgment against Polk County and the State in accordance with rules 105 and 237, notwithstanding the fact that Easter Lake had asked for no such relief against these defendants. The State sought interlocutory appeal from this order, and Polk County challenged it by petition for writ of certiorari. We granted both applications and have consolidated the cases on appeal.

■ II. *Applicability of Rule 179(b).* Both defendants contend that Easter Lake's use of rule 179(b) to challenge the April 1 ruling was procedurally incorrect and that the court's ruling on the motion was invalid and must be reversed.

Iowa Rule of Civil Procedure 179(b) permits a party to request enlarged or amended findings of fact or conclusions of law by "motion joined with or filed within the time allowed for a motion for new trial." Such a motion is appropriate where issues of fact have been tried without a jury, or where a rule specifically allows a rule 179(b) motion. *Osborne v. Iowa Natural Resources Council*, 336 N.W.2d 745, 747 (Iowa 1983); *Kunau v. Miller*, 328 N.W.2d 529, 530 (Iowa 1983)

Rule 237, which governs summary judgments, specifically permits a party to seek relief under rule 179(b) when summary judgment disposes of the entire case. Iowa R.Civ.P. 237(c); *Kunau*, 328 N.W.2d at 530. As a procedural matter, therefore, Easter Lake's use of a rule 179(b) motion to challenge the court's April 1 ruling on the State's motion for summary judgment was proper.

■ Neither by its terms nor by its purpose, however, is a rule 105 adjudication amenable to such a challenge. Ordinarily, an adjudication under rule 105 is appropriate only when a question of law arises from uncontroverted pleadings. *State ex rel. Miller v. Hydro Mag, Ltd.*, 379 N.W.2d 911, 913 (Iowa 1986). Given the underlying purpose of the rule—to dispose of a case on a point of law where the facts are undisputed—a motion to enlarge or amend findings would have no application. Moreover, the rule itself provides that such an adjudication is a "final order ... which shall not be questioned on the trial of any part of the case of which it does not dispose." Iowa R.Civ.P. 105. Thus we have said that "[w]here a ruling on an application to adjudicate law points under Iowa Rule of Civil Procedure 105 disposes of the entire case, it is an appealable final order." *In re Estate of Schield*, 300 N.W.2d 302, 304 (Iowa 1981).

Here, Polk County premised its motion to adjudicate law points on the assertion pled by Easter Lake that the abatement order upheld in *Easter Lake I* constituted the triggering event entitling it to just compensation under a "takings" theory. The district court rejected Easter Lake's allegation as a matter of law, holding that it had no legal right to insist on condemnation proceedings under these circumstances. That ruling, right or wrong, was dispositive of plaintiff's entire case against Polk County.

Given our prior interpretations of rule 105, we hold that Easter Lake's rule 179(b) motion was ineffective to challenge the court's rule 105 adjudication or to delay appeal therefrom. The district court was thus without authority to reverse itself eight months after the ruling and reinstate Polk County as a party. Cf. *Synder v. Allamakee County*, 402 N.W.2d 416, 418 (Iowa 1987) (finality of default judgment put district court's power to proceed further at an end, subject to *appropriate* and timely-filed postjudgment motion). Accordingly, we reverse the court's November 1987 ruling against Polk County and direct that the April 1 judgment in its favor be reinstated.

III. *State's Motion for Summary Judgment.* In *Easter Lake I*, we found substantial evidence to support the INRC's assertion that Easter Lake's owner and developer, Ronald Woods, had built the mobile home park on a floodplain and had knowingly failed to obtain the necessary permit to do so. *Easter Lake*, 328 N.W.2d at 907, 910, 911–12. We also rejected East-

er Lake's contention that the INRC's abatement order would have deprived plaintiff of property without due process of law. *Id.* at 910. We then summarized the basis for the INRC's claim of nuisance and upheld the finding as follows:

Section 455A.33 makes a statutory nuisance of any structure in a floodway which will "adversely affect the efficiency of or unduly restrict the capacity of the floodway," or "adversely affect the control, development, protection, allocation, or utilization of the water resources of this state...." At the time Woods bought the site and erected the mobile home court, the dam and lake were in existence. The dam was functioning properly, handling the water, and of approved engineering standards of design and construction for safety purposes. This was the state of the waterway when Woods bought and built. But his installation of an inhabited mobile home court changed matters drastically. The preexisting dam and lake were no longer of acceptable engineering standards of design and construction. The dam and lake had to be eliminated or they had to be changed substantially—which would back water onto upstream properties—or the mobile home court had to go. By building the mobile home court Woods thus adversely affected the efficiency of the floodway as it preexisted and he necessarily restricted its capacity....

Woods also adversely affected the utilization of the water resources of this state. If the mobile home court remained, the preexisting recreational dam and lake had to go.

We need not decide whether, if the mobile home court had been there first under a permit, the council could have lawfully permitted a dam and lake to be built. That is the reverse of the actual scenario. Under the facts which the council found on substantial evidence, the council was warranted in holding that the mobile home court constituted a nuisance.

*Id.* at 911.

In its motion for summary judgment in the present case, the State urged the district court to hold that the doctrine of issue preclusion bars Easter Lake from relitigating its "takings" claim a second time. Indeed, it appears beyond dispute that the facts that ultimately led to the abatement order are the same facts forming the basis for Easter Lake's current claim that the action was "so oppressive that it resulted in a taking for which compensation is due under both the United States and Iowa Constitutions." Nevertheless, there is some merit in Easter Lake's assertion that its "takings" claim—though raised before the agency and district court in *Easter Lake I*—was overshadowed by the nuisance claim and never formally ruled upon.

Given the absence of disputed operative facts, however, the case is ripe for summary judgment. *See* Iowa R.Civ.P. 237(c). The remaining question is a purely legal one: Did the abatement order upheld in *Easter Lake I* constitute a taking of property entitling Easter Lake to a condemnation award? We think not.

■ The "takings" doctrine is premised on the notion that government cannot take private property for public use without paying adequate compensation. *Interstate Power Co. v. Dubuque County*, 391 N.W.2d 227, 229 (Iowa 1986); Iowa Const. art. I, § 18. A "taking" of property need not involve wholesale appropriation of the land in fee simple; government action that substantially deprives a person of the use of property, in whole or in part, may be a compensable taking. *Phelps v. Board of Supervisors*, 211 N.W.2d 274, 276 (Iowa 1973); *see also Woodbury County Soil Conservation Dist. v. Ortner*, 279 N.W.2d 276, 277–78 (Iowa 1979).

■ An important distinction must be drawn, however, between the State's use of its eminent domain powers and its use of police powers. The former involves taking property for the public's use, thus requiring just compensation. *Ortner*, 279 N.W.2d at 277–78. Police powers, on the other hand, involve the control and regulation of private property for the public good. *Id.* at 278. Ordinarily, the latter may be exercised without payment of compensa-

tion. *Id.* The use of police power may rise to the level of a compensable taking, however, if the control or regulation substantially deprives the owner of the property's use and enjoyment. *Id.*

■ Generally, the use of police power to abate a nuisance will not give rise to a compensable taking because a person has no vested property right in a nuisance. *See Kasparek v. Johnson County Bd. of Health,* 288 N.W.2d 511, 520 (Iowa 1980). The test is whether the collective benefits of the regulatory action outweigh the restraint imposed upon the property owner. *Ortner,* 279 N.W.2d at 278. In that connection, courts must consider the economic impact of the regulation and, in particular, the extent to which it interferes with the property owner's investment-backed expectations. *Id.; see also Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 485–90, 107 S.Ct. 1232, 1242–45, 94 L.Ed.2d 472, 488–92 (1987). Each case must be decided on its own facts. *Ortner,* 279 N.W.2d at 279.

■ Applying these principles to the present case, there can be no doubt that the INRC abatement order put Easter Lake out of business. We are convinced, however, that this economic deprivation was of Easter Lake's own making. It was the development itself, and the resultant risk to life and property, that prompted the change in the dam's official status from low to high hazard. We previously weighed the collective benefit to the State against the individual restraint on Easter Lake Estates and found that the mobile home park "adversely affected the utilization of the water resources of this state" to the extent that either the park, or the dam, "had to go." *Easter Lake,* 328 N.W.2d at 911. Clearly the scales tip in favor of the State under these circumstances.

■ Undeterred, Easter Lake insists that the State is equitably estopped from resisting condemnation proceedings. To prevail on an equitable estoppel theory, a litigant must prove four elements, the first being "a false representation or concealment of material facts." *Fernandez v. Iowa Dep't of Human Servs.,* 375 N.W.2d

701, 708 (Iowa 1985). Here, Easter Lake claims the State misled it in two respects: first, in allowing the park to be built (or concealing the need for a permit) in violation of the permit requirements of Iowa Code chapter 455A; and, second, in allowing the park's continued occupancy in the shadow of a high hazard dam.

As to the permit issue, Easter Lake cannot now claim that it did not knowingly fail to obtain the necessary state permit for development in a floodway. That fact was conclusively established in the prior litigation. *Easter Lake,* 328 N.W.2d at 907, 910.

As for the second claim of misrepresentation, it is axiomatic that the State could neither misrepresent nor conceal facts of which it was unaware. It was not until a 1979 reclassification of earthen dams by the U.S. Corps of Engineers that the Easter Lake dam was rated high hazard. As previously noted, it was Easter Lake's development that prompted the change. The State's renewal of mobile home occupancy licenses after 1979 cannot be viewed as a misrepresentation of the dam's high hazard status. The State was merely enabling the mobile home park to operate pending final adjudication of the INRC nuisance action and the additional five years allowed for abatement.

In summary, this record is devoid of any action by the State that would constitute an impermissible taking and require, either at law or in equity, the commencement of condemnation proceedings. The district court was correct in so ruling in the first instance and in error when it later rescinded that order. Accordingly, we reverse the district court and direct that it reinstate its order of April 1, 1987, granting summary judgment in the State's favor and dismissing plaintiff's mandamus action.

REVERSED AND REMANDED WITH INSTRUCTIONS.